# EXHIBIT 61

# A Statement from Constitutional Law Scholars on Columbia

### Eugene Volokh, Michael C. Dorf, David Cole, and 15 other scholars

The government may not threaten funding cuts as a tool to pressure recipients into suppressing First Amendment–protected speech.

March 20, 2025



Geo. P. Hall & Son/The New York Historical Society/Getty Images

A lecture hall at Columbia University photographed by the commercial studio George P. Hall & Son, New York City, 1895

We write as constitutional scholars—some liberal and some conservative—who seek to defend academic freedom and the First Amendment in the wake of the federal government's recent treatment of Columbia University.

The First Amendment protects speech many of us find wrongheaded or deeply offensive, including anti-Israel advocacy and even antisemitic advocacy. The government may not threaten funding cuts

as a tool to pressure recipients into suppressing such viewpoints. This is especially so for universities, which should be committed to respecting free speech.

At the same time, the First Amendment of course doesn't protect antisemitic violence, true threats of violence, or certain kinds of speech that may properly be labeled "harassment." Title VI rightly requires universities to protect their students and other community members from such behavior. But the lines between legally unprotected harassment on the one hand and protected speech on the other are notoriously difficult to draw and are often fact-specific. In part because of that, any sanctions imposed on universities for Title VI violations must follow that statute's well-established procedural rules, which help make clear what speech is sanctionable and what speech is constitutionally protected.

Yet the administration's March 7 cancellation of $400 million in federal funding to Columbia University did not adhere to such procedural safeguards. Neither did its March 13 ultimatum stipulating that Columbia make numerous changes to its academic policies—including the demand that, within one week, it "provide a full plan" to place an entire "department under academic receivership for a minimum of five years"—as "a precondition for formal negotiations regarding Columbia University's continued financial relationship with the United States government."

Under Title VI, the government may not cut off funds until it has

- conducted a program-by-program evaluation of the alleged violations;
- provided recipients with notice and "an opportunity for hearing";
- limited any funding cutoff "to the particular program, or part thereof, in which…noncompliance has been…found"; and
- submitted a report explaining its actions to the relevant committees in Congress at least thirty days before any funds can be stopped.

These requirements aim to ensure that any withdrawal of funds is based on genuine misbehavior on the university's part—on illegal toleration of discriminatory conduct, not just on allowance of First Amendment–protected expression. The requirements aim to make clear to recipients of federal funds just what behavior can form the basis for sanctions. And each of the requirements aims to make sure that the sanction fits the offense.

Yet here the sanction was imposed without any agency or court finding that Columbia violated Title VI in its response to antisemitic harassment or discrimination. Even to the extent that some protesters' behavior amounted to illegal harassment of Jewish students, no

agency and no court has concluded that Columbia illegally failed to reasonably respond to such discriminatory behavior—much less failed to act at a level justifying withdrawal of nearly half a billion dollars in funds. The government's action therefore risks deterring and suppressing constitutionally protected speech—not just illegal discriminatory conduct.

And this danger extends beyond universities. The safeguards and limits that the administration has ignored are designed to protect all recipients of federal funding from unwarranted or excessive sanctions. They protect recipients of federal funding across the ideological spectrum, including K-12 schools, hospitals, nursing homes, and business and agricultural initiatives. The administration's failure to honor the Title VI safeguards creates a dangerous precedent for every recipient of federal financial assistance.

Steven G. Calabresi
Clayton J. and Henry R. Barber Professor of Law, Northwestern Law School

Erwin Chemerinsky
Dean and Jesse H. Choper Distinguished Professor of Law, Berkeley Law School

David Cole
Hon. George J. Mitchell Professor in Law and Public Policy, Georgetown University Law Center

Michael C. Dorf
Robert S. Stevens Professor of Law, Cornell Law School

Richard Epstein
Laurence A. Tisch Professor of Law, NYU School of Law

Owen Fiss
Sterling Professor Emeritus of Law, Yale Law School

Aziz Huq
Frank and Bernice J. Greenberg Professor of Law, University of Chicago Law School

Pamela Karlan
Kenneth and Harle Montgomery Professor of Public Interest Law, Stanford Law School

Randall Kennedy
Michael R. Klein Professor of Law, Harvard Law School

Genevieve Lakier
Professor of Law, Herbert and Marjorie Fried Teaching Scholar, University of Chicago Law School

Michael McConnell

Richard and Frances Mallery Professor of Law, Stanford Law School

Michael Paulsen

Distinguished University Chair and Professor, St. Thomas Law School

Robert Post

Sterling Professor of Law, Yale Law School

David Rabban

Dahr Jamail, Randall Hage Jamail, and Robert Lee Jamail Regents Chair in Law, University of Texas Law School

Geoffrey R. Stone

Edward H. Levi Distinguished Service Professor of Law, University of Chicago Law School

Nadine Strossen

John Marshall Harlan II Professor of Law Emerita, New York Law School

Eugene Volokh

Thomas M. Siebel Senior Fellow, Hoover Institution, Stanford University

Keith Whittington

David Boies Professor of Law, Yale Law School

### Eugene Volokh

Eugene Volokh is the Thomas M. Siebel Senior Fellow at the Hoover Institution at Stanford University.

### Michael C. Dorf

Michael C. Dorf is the Robert S. Stevens Professor of Law at Cornell Law School. His books include *Beating Hearts: Abortion and Animal Rights*, coauthored with Sherry Colb, and *The Oxford Introductions to US Law: Constitutional Law*, coauthored with Trevor Morrison. (December 2022)

### David Cole

David Cole is the Honorable George J. Mitchell Professor in Law and Public Policy at the Georgetown University Law Center and the former National Legal Director of the ACLU. (March 2025)

### 15 other scholars