# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

AMERICAN ASSOCIATION of UNIVERSITY
PROFESSORS and AMERICAN FEDERATION
of TEACHERS,

        Plaintiffs,

    v.

UNITED STATES DEPARTMENT of JUSTICE
et al.,

        Defendants.

Case No. 1:25-cv-02429-MKV

**BRIEF OF *AMICI CURIAE* CENTER FOR CONSTITUTIONAL GOVERNANCE, KATE**
**ANDRIAS, JESSICA BULMAN-POZEN, AND OLATUNDE C. JOHNSON IN SUPPORT**
**OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

CLARICK GUERON REISBAUM LLP

Gregory A. Clarick
Nora Niedzielski-Eichner
Clarick Gueron Reisbaum LLP
41 Madison Avenue, 23rd Floor
New York, NY 10010

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................ ii

ARGUMENT ................................................................................................................... 2

I.    The Spending Power Belongs to Congress, not the Executive ............................. 2

II.   The Spending Clause Requires that Recipients Be Given Clear Notice of and Consent to Any Conditions Imposed on Their Receipt of Federal Funds ........................... 5

III.  Defendants Have Usurped Congress's Spending Power and Violated the Separation of Powers by Withholding Funds Inconsistent with Statutory Requirements and by Attempting to Impose New Conditions of which Columbia Lacked Notice When It Accepted Funds ................................................................................................. 6

IV.   Defendants Have Violated the Spending Clause by Conditioning Funds on the Relinquishing of Academic Freedom ............................................................. 12

CONCLUSION .............................................................................................................. 14

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                          **Page(s)**

*Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*,
    570 U.S. 205 (2013)..................................................................................................2, 12

*In re Aiken County*,
    725 F.3d 255 (D.C. Cir. 2013) ...................................................................................3

*Alexander v. Sandoval*,
    532 U.S. 275 (2001)......................................................................................................8

*Am. Sch. of Magnetic Healing v. McAnnulty*,
    187 U.S. 94 (1902)......................................................................................................11

*Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*,
    548 U.S. 291 (2006)............................................................................................2, 6, 10

*Armstrong v. Exceptional Child Ctr., Inc.*,
    575 U.S. 320 (2015)....................................................................................................11

*Barnes v. Gorman*,
    536 U.S. 181 (2002)..................................................................................................5, 10

*Bennett v. New Jersey*,
    470 U.S. 632 (1985)......................................................................................................6

*Bowsher v. Synar*,
    478 U.S. 714 (1986)......................................................................................................4

*CFPB v. Cmty. Fin. Servs. Ass'n of Am.*,
    601 U.S. 416 (2024)......................................................................................................3

*Cincinnati Soap Co. v. United States*,
    301 U.S. 308 (1937)......................................................................................................3

*City of Arlington v. FCC*,
    569 U.S. 290 (2013)......................................................................................................7

*Clinton v. City of New York*,
    524 U.S. 417 (1998)..................................................................................................3, 5

*Cummings v. Premier Rehab Keller, P.L.L.C.*,
    596 U.S. 212 (2022)............................................................................................1, 5, 10

*DHS v. Regents of the Univ. of Cal.*,
    591 U.S. 1 (2020)........................................................................................................11

*FCC v. League of Women Voters of Cal.*,
    468 U.S. 364 (1984) ......................................................................................................12

*Gregory v. Ashcroft*,
    501 U.S. 452 (1991) ........................................................................................................4

*Harmon v. Brucker*,
    355 U.S. 579 (1958) ......................................................................................................11

*Heim v. Daniel*,
    81 F.4th 212 (2d Cir. 2023) ..........................................................................................13

*Keyishian v. Bd. of Regents*,
    385 U.S. 589 (1967) ......................................................................................................13

*Mistretta v. United States*,
    488 U.S. 361 (1989) ........................................................................................................4

*NAACP v. Button*,
    371 U.S. 415 (1963) ......................................................................................................13

*Nat'l Council of Nonprofits v. OMB*,
    No. 25-cv-0239, 2025 WL 368852 (D.D.C. Feb. 3, 2025) ............................................4

*Nat'l Rifle Ass'n of Am. v. Vullo*,
    602 U.S. 175 (2024) ......................................................................................................12

*New York v. U.S. Dep't of Health & Hum. Servs.*,
    414 F. Supp. 3d 475 (S.D.N.Y. 2019) ............................................................................6

*NFIB v. OSHA*,
    595 U.S. 109 (2022) ...................................................................................................4, 6

*Pennhurst State Sch. & Hosp. v. Halderman*,
    451 U.S. 1 (1981) ..................................................................................................5, 6, 10

*Perry v. Sindermann*,
    408 U.S. 593 (1972) ......................................................................................................12

*PFLAG, Inc. v. Trump*,
    No. 22-cv-0337, 2025 WL 685124 (D.M.D. Mar. 4, 2025) ..........................................4

*Rust v. Sullivan*,
    500 U.S. 173 (1991) ......................................................................................................12

*SEC v. Chenery Corp.*,
    332 U.S. 194 (1947) ......................................................................................................11

*Soule v. Connecticut Ass'n of Sch., Inc.*,
   90 F.4th 34 (2d Cir. 2023) ...................................................................6, 10

*South Dakota v. Dole*,
   483 U.S. 203 (1987)..................................................................................3

*Sweezy v. New Hampshire*,
   354 U.S. 234 (1957)................................................................................13

*Widakuswara v. Lake*,
   No. 25-cv-2390, 2025 WL 945869 (S.D.N.Y. Mar. 28, 2025)................4

**Constitution**

U.S. Const. amend. I ...............................................................12, 13, 14

U.S. CONST. art. I, § 7, cl. 2 .........................................................................3

U.S. CONST. art. I, § 8 cl. 1 ...........................................................................1

U.S. CONST. art. I, § 9, cl. 7 .........................................................................2

**Statutes**

5 U.S.C. § 706...............................................................................................9

42 U.S.C. § 2000d.........................................................................................2

42 U.S.C. § 2000d-1...........................................................................2, 8, 9, 10

Administrative Procedure Act.........................................................................9

Civil Rights Act of 1964 ................................................................ *passim*

Civil Rights Restoration Act of 1987............................................................10

**Regulations**

28 C.F.R. §§ 42.106–111 ..............................................................................8

28 C.F.R. § 42.108(c)..................................................................................8, 9

34 C.F.R. § 100.6-11.....................................................................................8

34 C.F.R. § 100.8(c).....................................................................................8, 9

41 C.F.R. § 101-6.211-3 .............................................................................8, 9

41 C.F.R. §§ 101-6.212-1 to -4,....................................................................8

41 C.F.R. §§ 101-6.213-1 to -7 ................................................................................8

41 C.F.R. § 101-6.214 ..............................................................................................8

45 C.F.R. §§ 80.6-80.11 ...........................................................................................8

45 C.F.R. § 80.8(c) ...............................................................................................8, 9

**Other Authorities**

110 Cong. Rec. 6544 (1964) ................................................................................9, 10

Letter from Josh Gruenbaum, Comm'r of the Fed. Acquisition Serv., et al. to Dr. Katrina
    Armstrong, Interim President, Columbia University (Mar. 13, 2025),
    https://perma.cc/34DW-QWZ3 .......................................................................7, 8

S. Rep. No. 100-64 (1987)
    *as reprinted in* 1988 U.S.C.C.A.N. 3 ............................................................9, 10

THE FEDERALIST NO. 58 (James Madison) ...............................................................3

THE FEDERALIST NO. 78 (Alexander Hamilton) .......................................................3

U.S. Gen. Servs. Admin., *DOJ, HHS, ED, and GSA Announce Initial Cancellation of Grants and
    Contracts to Columbia University Worth $400 Million* (Mar. 7, 2025),
    https://perma.cc/72VB-JXLL ...............................................................................7

U.S. Gen. Servs. Admin., *HHS, ED, and GSA Announce Additional Measures to End Anti-
    Semitic Harassment on College Campuses* (Mar. 3, 2025),
    https://perma.cc/CTQ5-D64L ..............................................................................7

## IDENTITY AND INTEREST OF *AMICI CURIAE*

*Amici curiae* are a nonpartisan legal and policy organization and law professors who are scholars of the Constitution and Title VI and directors of the organization.

**The Center for Constitutional Governance** at Columbia Law School is a nonpartisan legal and policy organization devoted to the study of constitutional structure and authority.

**Kate Andrias** is a Faculty Director of the Center for Constitutional Governance and the Patricia D. and R. Paul Yetter Professor of Law at Columbia Law School.

**Jessica Bulman-Pozen** is a Faculty Director of the Center for Constitutional Governance and the Betts Professor of Law at Columbia Law School.

**Olatunde Johnson** is a Faculty Director of the Center for Constitutional Governance and the Ruth Bader Ginsburg '59 Professor of Law at Columbia Law School.

Professors Andrias, Bulman-Pozen, and Johnson have significant expertise in constitutional law, separation of powers, civil rights, and administrative law. They teach courses and have published widely in these fields.

The Center and its scholar directors have an interest in ensuring that the separation of powers and rule of law are upheld.

## SUMMARY OF ARGUMENT

It is a basic point of American constitutional law that the Spending Clause vests the power to spend money, and condition its use, exclusively in Congress. U.S. CONST. art. I, § 8 cl. 1. The President and federal agencies may carry out spending legislation, but they possess no independent spending power. As the Supreme Court has repeatedly made clear, moreover, Spending Clause legislation "operates based on consent." *Cummings v. Premier Rehab Keller, P.L.L.C.*, 596 U.S. 212, 219 213 (2022) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 451

U.S. 1, 16–17 (1981)). For Spending Clause legislation to be constitutional, the statute must provide the recipient of funds "clear notice" of the terms on which it accepts those funds and the conditions under which it might lose them. *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 296 (2006).

Title VI of the Civil Rights Act of 1964 is Spending Clause legislation that appropriately provides notice, setting forth the requirement that funding recipients may not discriminate "on the basis of race, color, or national origin," 42 U.S.C. § 2000d, and establishes clear procedures before funding can be terminated, *id.* § 2000d-1. By cutting off hundreds of millions of dollars of funding to Columbia University without adhering to these procedures, Defendants have acted in flagrant violation of Title VI. Their actions also violate the Spending Clause's fundamental requirements of notice and consent and the constitutional vesting of the spending power in Congress: The Executive may not impose conditions on funds beyond those authorized by statute and may not circumvent requirements of notice and consent, as has occurred here.

It is also clearly established that the spending power may not be used to burden constitutional rights, including freedom of speech and academic freedom, in ways not germane to the funding program. *See Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*, 570 U.S. 205, 214 (2013). Defendants' demands to Columbia University are unconstitutional conditions.

This Court should grant the motion for a preliminary injunction.

## ARGUMENT

### I.    The Spending Power Belongs to Congress, not the Executive

The United States Constitution grants the power of the purse exclusively to Congress. U.S. CONST. art. I, § 9, cl. 7 (Appropriations Clause); *id.* § 8, cl. 1 (Spending Clause). The spending power allows Congress to "lay and collect Taxes, Duties, Imposts, and Excises, to pay

the Debts and provide for the common Defence and general Welfare of the United States." *Id.* §
8, cl. 1; *see CFPB v. Cmty. Fin. Servs. Ass'n of Am.*, 601 U.S. 416, 430 (2024); *Cincinnati Soap
Co. v. United States*, 301 U.S. 308, 321–22 (1937).

  That the power of the purse rests solely with Congress is long established and undisputed.
As the Supreme Court has observed: "By the time of the Constitutional Convention, the principle
of legislative supremacy over fiscal matters engendered little debate and created no
disagreement. It was uncontroversial that the powers to raise and disburse public money would
reside in the Legislative Branch." *CFPB*, 601 U.S. at 417; *see also* THE FEDERALIST NO. 78
(Alexander Hamilton) (Congress "commands the purse"); *id.* NO. 58 (James Madison) ("The
power over the purse may [be] the most complete and effectual weapon with which any
constitution can arm the immediate representatives of the people.").

  Incident to its spending power, and consistent with its legislative role, "Congress may
attach conditions on the receipt of federal funds," provided it adheres to certain requirements.
*South Dakota v. Dole*, 483 U.S. 203, 206 (1987) (spending must be in pursuit of "the general
welfare" and conditions on federal funds must be unambiguous and related "to the federal
interest in particular national projects or programs").

  In contrast to Congress, the Executive lacks the power of the purse. Neither the President
nor federal agencies may impose conditions on spending beyond those authorized by statute. As
the Supreme Court has observed: "There is no provision in the Constitution that authorizes the
President to enact, to amend, or to repeal statutes." *Clinton v. City of New York*, 524 U.S. 417,
438 (1998). The President may veto legislation. U.S. CONST. art. I, § 7, cl. 2. But the President is
without authority to cancel appropriations or rewrite spending legislation by adding conditions
that Congress has not authorized. *See generally In re Aiken County*, 725 F.3d 255, 261 n.1 (D.C.

Cir. 2013) (Kavanaugh, J.) ("[A] President sometimes has policy reasons . . . for wanting to spend less than the full amount appropriated by Congress for a particular project or program. But in those circumstances, even the President does not have unilateral authority to refuse to spend the funds."); *see also, e.g.*, *Widakuswara v. Lake*, No. 25-cv-2390, 2025 WL 945869, at *7 (S.D.N.Y. Mar. 28, 2025); *PFLAG, Inc. v. Trump,* No. 22-cv-0337, 2025 WL 685124, at *14 (D.M.D. Mar. 4, 2025); *Nat'l Council of Nonprofits v. OMB*, 25-cv-0239, 2025 WL 368852, at *12 (D.D.C. Feb. 3, 2025). Federal agencies also do not have an independent spending power. They are "creatures of statute" and "possess only the authority that Congress has provided." *NFIB v. OSHA*, 595 U.S. 109, 117 (2022).

If the Executive exercises power that belongs exclusively to Congress, it violates the separation of powers and infringes the liberty safeguarded by separated powers. The Supreme Court "consistently has given voice to, and has reaffirmed, the central judgment of the Framers of the Constitution that, within our political scheme, the separation of governmental powers into three coordinate Branches is essential to the preservation of liberty." *Mistretta v. United States*, 488 U.S. 361, 380 (1989); *see also, e.g.*, *Gregory v. Ashcroft*, 501 U.S. 452, 458–59 (1991) ("[T]he separation and independence of the coordinate branches of the Federal Government serve to prevent the accumulation of excessive power in any one branch . . . ."); *Bowsher v. Synar*, 478 U.S. 714, 721 (1986) ("The declared purpose of separating and dividing the powers of government, of course, was to 'diffus[e] power the better to secure liberty.'" (alteration in original) (quoting *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 635 (1952) (Jackson, J., concurring))).

Because Congress's power of the purse is an exclusive congressional power, Executive attempts to usurp the spending power violate the separation of powers. They also infringe the

liberty our system of separated powers protects. As Justice Kennedy explained, recognizing the particular risk of Executive aggrandizement and abuse when it comes to spending, if "the decision to spend [were] determined by the Executive alone, without adequate control by the citizen's Representatives in Congress, liberty [would be] threatened. Money is the instrument of policy and policy affects the lives of citizens. The individual loses liberty in a real sense if that instrument is not subject to traditional constitutional constraints." *Clinton*, 524 U.S. at 451 (Kennedy, J., concurring).

## II.    The Spending Clause Requires that Recipients Be Given Clear Notice of and Consent to Any Conditions Imposed on Their Receipt of Federal Funds

The spending power requires that clear notice of applicable conditions be provided to recipients of federal grants. *See Cummings v. Premier Rehab Keller*, *P.L.L.C.*, 596 U.S. 212, 219 (2022); *Barnes v. Gorman*, 536 U.S. 181, 185-186 (2002); *Pennhurst State School and Hospital v. Halderman*, 451 U.S. 1, 16-17 (1981). As the Supreme Court has repeatedly emphasized, "[u]nlike ordinary legislation, which 'imposes congressional policy' on regulated parties 'involuntarily,' Spending Clause legislation operates based on consent." *Cummings*, 596 U.S. at 219 (quoting *Pennhurst*, 451 U.S. at 16-17). Accordingly, "the 'legitimacy of Congress' power' to enact Spending Clause legislation rests . . . on 'whether the [recipient] voluntarily and knowingly accepts the terms'" of the conditional funding. *Cummings*, 596 U.S. 212, 219 (2022) (quoting *Barnes*, 536 U.S. at 186 (quoting *Pennhurst*, 451 U.S. at 17)).

Such voluntary consent is critical for Spending Clause legislation affecting States and private parties alike. *See, e.g.*, *Cummings*, 596 U.S. 212; *Pennhurst*, 451 U.S. 1. And it requires that any conditions attached to federal funding be stated unambiguously at the time the recipient accepts the funding offer. "There can, of course, be no knowing acceptance if a [funding recipient] is unaware of the conditions or is unable to ascertain what is expected of it.

Accordingly, if Congress intends to impose a condition on the grant of federal moneys, it must do so unambiguously." *Pennhurst*, 451 U.S. at 17; *see Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy,* 548 U.S. 291, 296 (2006); *Soule v. Connecticut Ass'n of Sch., Inc.*, 90 F.4th 34, 52 (2d Cir. 2023); *New York v. U.S. Dep't of Health & Hum. Servs.*, 414 F. Supp. 3d 475, 567 (S.D.N.Y. 2019).

Once a recipient has accepted federal funds, moreover, Congress may not significantly alter the specified conditions or introduce entirely new demands. *See, e.g.*, *Bennett v. New Jersey*, 470 U.S. 632, 640 (1985) ("Retroactive application of changes in the substantive requirements of a federal grant program would deny both federal auditors and grant recipients fixed, predictable standards for determining if expenditures are proper."); *see also New York v. U.S. Dep't of Health & Hum. Servs.*, 414 F. Supp. 3d at 567 ("[Alt]hough Congress's power to legislate under the spending power is broad, it does not include surprising participating States with post-acceptance or 'retroactive' conditions." (quoting *NFIB v. Sebelius*, 567 U.S. 519, 584 (2012) (quoting *Pennhurst*, 451 U.S. at 25))).

III.   **Defendants Have Usurped Congress's Spending Power and Violated the Separation of Powers by Withholding Funds Inconsistent with Statutory Requirements and by Attempting to Impose New Conditions of which Columbia Lacked Notice When It Accepted Funds**

The notice and consent requirements of Spending Clause legislation—which apply to Congress itself—cannot be evaded through executive action. The Executive has no spending power of its own, and federal agencies may exercise only those powers that Congress has properly delegated to them. *See NFIB v. OSHA*, 595 U.S. 109, 117 (2022) ("Administrative agencies . . . . possess only the authority that Congress has provided."). "Both [federal agencies'] power to act and how they are to act is authoritatively prescribed by Congress, so that when they

act improperly, no less than when they act beyond their jurisdiction, what they do is ultra vires."

*City of Arlington v. FCC*, 569 U.S. 290, 297 (2013).

Congress has given Defendants responsibility for administering Title VI, but Defendants must also themselves comply with Title VI. Accordingly, if Defendants believe Columbia is violating Title VI, they must follow the enforcement procedures specified by Congress; they lack authority to enforce the statute in a manner at odds with congressionally-imposed requirements. Yet Defendants have wholly disregarded Title VI's statutory procedures, summarily terminated funding, and imposed a set of novel, ambiguous demands as a "precondition" to negotiations about Columbia's maintaining federal funding. These actions violate both Title VI and the Constitution.

On March 3, 2025, Defendants announced a "comprehensive review" of federal funding to Columbia "in light of ongoing investigations for potential violations of Title VI." U.S. Gen. Servs. Admin., *HHS, ED, and GSA Announce Additional Measures to End Anti-Semitic Harassment on College Campuses* (Mar. 3, 2025), https://perma.cc/CTQ5-D64L. Four days later, Defendants announced the "immediate cancellation of approximately $400 million in federal grants and contracts to Columbia University due to the school's continued inaction in the face of persistent harassment of Jewish students." U.S. Gen. Servs. Admin., *DOJ, HHS, ED, and GSA Announce Initial Cancellation of Grants and Contracts to Columbia University Worth $400 Million* (Mar. 7, 2025), https://perma.cc/72VB-JXLL. The only legal authority invoked was Title VI. *Id*. The following week, in a letter dated March 13, Defendants demanded that Columbia make numerous changes to its academic policies as "a precondition for formal negotiations regarding Columbia University's continued financial relationship with the United States government." Letter from Josh Gruenbaum, Comm'r of the Fed. Acquisition Serv., et al. to Dr.

Katrina Armstrong, Interim President, Columbia University (Mar. 13, 2025),

https://perma.cc/34DW-QWZ3. This letter again described the reason for terminating funding as

Columbia's failure to protect "students and faculty from antisemitic violence and harassment in

addition to other alleged violations of Title VI and Title VII." *Id*.

Although Defendants cited alleged violations of Title VI as the basis for cancelling

funding, they did not comply with the procedures Title VI itself mandates before federal funds

may be terminated. *See* 42 U.S.C. § 2000d-1; *Alexander v. Sandoval*, 532 U.S. 275, 290 (2001)

(recognizing that Title VI places "elaborate restrictions" on agency enforcement); *see also, e.g.*,

45 C.F.R. §§ 80.6-80.11 (HHS); 34 C.F.R. §§ 100.6-11 (ED); 28 C.F.R. §§ 42.106–111 (DOJ);

41 C.F.R. §§ 101-6.211-3, 101-6.212-1 to -4, 101-6.213-1 to -7, 101-6.214 (GSA). Rather, they

acted in clear violation of those procedures.

Specifically, Defendants violated Title VI's guarantee that no action terminating funding

"shall be taken until the department or agency concerned has advised the appropriate person or

persons of the failure to comply with [Title VI]" and "has determined that compliance cannot be

secured by voluntary means." 42 U.S.C. §2000d-1; *see also* 45 C.F.R. § 80.8(c); 34 C.F.R. §

100.8(c); 28 C.F.R. § 42.108(c); 41 C.F.R. § 101-6.211-3. Defendants further violated the

statutory requirement to provide recipients, prior to termination, an "opportunity for a hearing"

and, only after a full hearing, if supported by the record, to make an "express finding on the

record . . . of a failure to comply." 42 U.S.C. § 2000d-1. They likewise violated the statutory

command to limit the termination of funds to "the particular political entity, or part thereof, or

other recipient as to whom such a finding [of noncompliance] has been made" and to limit "its

effect to the particular program, or part thereof, in which such noncompliance has been so

found." 42 U.S.C. § 2000d-1; *accord* 45 C.F.R. § 80.8(c); 34 C.F.R. § 100.8(c); 28 C.F.R.

§ 42.108(c); 41 C.F.R. § 101-6.211-3. And they failed to file a "full written" report with Congress and wait 30 days before terminating funding. 42 U.S.C. § 2000d-1 (requiring "full written report of the circumstances and the grounds for such action"); *accord* 45 C.F.R. § 80.8(c); 34 C.F.R. § 100.8(c); 28 C.F.R. § 42.108(c); 41 C.F.R. § 101-6.211-3. Defendants' actions are contrary, as well, to the purpose of the statute, which was not to achieve termination of federal aid but rather to end discrimination. *See* S. Rep. No. 100-64, at 5 (1987), *as reprinted in* 1988 U.S.C.C.A.N. 3, 7 (emphasizing narrowness of funding termination provision and explaining that statute is structured to "encourage [agencies] to find ways to end discrimination *without refusing or terminating assistance*" (emphasis added)); 110 Cong. Rec. 6544 (1964) (statement of Sen. Hubert Humphrey) ("[T]he purpose of Title VI is not to cut off funds but to end discrimination.").

In short, Defendants contravened Title VI by summarily terminating Columbia's funding and failing to follow the procedures the statute mandates. Their actions therefore violate the Administrative Procedure Act (APA). They were taken "not in accordance with law," "in excess of statutory . . . authority," and "without observance of procedure required by law." 5 U.S.C. § 706.

Defendants' actions also violate the Constitution: they exceed the Executive's authority and defy the basic requirements of Spending Clause legislation that recipients of funds, including private recipients, have clear notice of and consent to the conditions on which the funds are granted. As explained above, federal agencies may not exercise powers beyond those conferred upon them by Congress, and even Congress itself may not surprise funding recipients by imposing post-acceptance conditions.

The constitutional requirements of notice and consent extend not only to new substantive conditions on funding, but also to new procedures, enforcement mechanisms, and remedies that change the "consequences of . . . participation" in a spending program. *Cummings*, 596 U.S. at 220; *see also Arlington Cent.*, 548 U.S. at 300 (holding that prevailing parties "may not recover the costs of experts or consultants" because "the terms of the [statute] fail to provide the clear notice that would be needed to attach such a condition"); *Barnes*, 536 U.S. at 187 (holding that punitive damages are not available under the statute because "a remedy is appropriate relief only if the funding recipient is on notice that, by accepting federal funding, it exposes itself to liability of that nature" (internal quotation marks omitted)); *Soule*, 90 F.4th at 52 ("The contractual nature of Spending Clause legislation limits not only the scope of conduct for which funding recipients may be held liable for money damages but also the scope of available remedies" (internal quotation marks omitted)). This is because, as the Supreme Court has repeatedly made clear, the notice requirement is designed to make sure that an official or institution deciding whether to accept federal funds knows the significant consequences of accepting those funds. *See, e.g.*, *Pennhurst*, 451 U.S. at 17.

The possibility of losing federal funds without a hearing or formal finding of wrongdoing is certainly something a funding recipient would need notice of before accepting funds. Moreover, given the detailed statutory provisions concerning funding termination and the legislative attention paid to enforcement processes in both the 1964 Civil Rights Act and the Civil Rights Restoration Act of 1987, there can be no doubt that these processes are a significant part of the bargain, any changes to which require notice to funding recipients. *See* 42 U.S.C. § 2000d-1; *see also* S. Rep. No. 100-64, at 5 (1987), *as reprinted in* 1988 U.S.C.C.A.N. 3, 7; 110 Cong. Rec. 6544 (1964).

To be sure, Columbia was on notice that it must comply with federal law, including the antidiscrimination requirements of Title VI. But it had no notice that its funds could be terminated without adherence to statutory procedures—indeed, in direct contravention of these procedures.[1] Defendants' actions are ultra vires and unconstitutional. This Court should enjoin these unlawful actions. *See, e.g.*, *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327 (2015) ("The ability to sue to enjoin unconstitutional actions by state and federal officers is the creation of courts of equity, and reflects a long history of judicial review of illegal executive action, tracing back to England."); *Harmon v. Brucker*, 355 U.S. 579, 581–82 (1958) ("Generally, judicial relief is available to one who has been injured by an act of a government official which is in excess of his express or implied powers."); *Am. Sch. of Magnetic Healing v. McAnnulty*, 187 U.S. 94 (1902) (holding that courts must have power to grant relief so that private parties are not "left to the absolutely uncontrolled and arbitrary action of a public and administrative officer, whose action is unauthorized by any law").

---

[1] Notwithstanding their repeated references to Title VI in their communications with and about Columbia University, Defendants may contend that they have terminated grants to Columbia for other reasons. Any such argument would fail. Defendants' several letters to Columbia, quoted above, expressly state that alleged violations of Title VI provided the basis for terminating funds. *See also, e.g.*, Dkt. No. 50, Ex. 40 (quoting individual termination letter stating that project was terminated due to "unsafe antisemitic actions that suggest the institution lacks concern for the safety and well-being of Jewish students"). It is a foundational principle of administrative law that agencies must defend their actions based on the grounds contemporaneously presented in their decisions. *SEC v. Chenery Corp.*, 332 U.S. 194 (1947); *DHS v. Regents of the Univ. of Cal.*, 591 U.S. 1, 20–21 (2020). Defendants may not now offer a different basis for their decision than the specified Title VI rationale.

Further, if the proffered reason is combating antisemitic harassment and discrimination, the statutory framework Congress provided in Title VI governs regardless of whether Defendants specifically referenced Title VI. The carefully wrought Title VI processes would be surplusage if an agency could ignore them simply by declaring that allegations of antisemitism (or statutorily prohibited discrimination) require funding termination outside of the Title VI framework.

**IV.      Defendants Have Violated the Spending Clause by Conditioning Funds on the Relinquishing of Academic Freedom**

The Supreme Court has made clear that government cannot condition funding on recipients' relinquishing their constitutional rights, and particularly their First Amendment rights:

> [E]ven though a person has no "right" to a valuable governmental benefit and even though the government may deny him the benefit for any number of reasons, there are some reasons upon which the government may not rely. It may not deny a benefit to a person on a basis that infringes his constitutionally protected interests—especially, his interest in freedom of speech. For if the government could deny a benefit to a person because of his constitutionally protected speech or associations, his exercise of those freedoms would in effect be penalized and inhibited. This would allow the government to "produce a result which [it] could not command directly."

*Perry v. Sindermann*, 408 U.S. 593, 597 (1972) (alteration in original) (quoting *Speiser v. Randall*, 357 U.S. 513, 526 (1958)). In addition, the government "violate[s] the First Amendment" by engaging in "conduct that, viewed in context, could be reasonably understood to convey a threat of adverse government action in order to punish or suppress . . . speech." *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 191 (2024).

The Supreme Court has recognized that the government may condition funds on being used consistent with the purpose for which they were authorized. *Rust v. Sullivan*, 500 U.S. 173, 196–97 (1991). But when the government leverages funding to interfere with rights, including free speech rights, in ways not germane to the funding program, its actions cross the line into unconstitutional conduct. *See Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*, 570 U.S. 205, 214 (2013); *FCC v. League of Women Voters of Cal.*, 468 U.S. 364, 399–401 (1984).

Here, Defendants are unconstitutionally seeking to use federal spending to interfere with a particularly important First Amendment interest: that of academic freedom. As the Court has recognized, academic freedom is a special concern of the First Amendment, one which must be

zealously safeguarded. *See, e.g., Keyishian v. Bd. of Regents*, 385 U.S. 589, 603 (1967) ("Our Nation is deeply committed to safeguarding academic freedom, which is of transcendent value to all of us and not merely to the teachers concerned."); *Sweezy v. New Hampshire*, 354 U.S. 234 (1957) ("The essentiality of freedom in the community of American universities is almost self-evident. . . . To impose any straitjacket upon the intellectual leaders in our colleges and universities would imperil the future of our Nation.").

Defendants are conditioning the ongoing receipt of funds on Columbia's relinquishing both its own academic freedom and that of individual researchers. *Cf. Heim v. Daniel,* 81 F.4th 212, 230 (2d Cir. 2023) (noting that "courts have consistently celebrated the need to safeguard universities' self-determination over the substance of the education they provide and the scholarship they cultivate" as well as individual researchers' own academic freedom and First Amendment interests). As the Plaintiffs' brief describes in detail, after halting research and scholarship protected by the First Amendment on March 7, Defendants imposed in their March 13 letter numerous conditions on resuming funding, nearly all of which restrict academic decisionmaking and limit the free speech of either Columbia itself or individual scholars and researchers. *See* Pls.' Mem. Supp. Mot. Prelim. Inj. 24 (citing Dkt. No. 49, Ex. 26).

Moreover, most, if not all, of the funds at issue involve scientific and medical research that has no evident relationship to any alleged Title VI complaint or allegation. *Id.* at 4. And Defendants' demands appear to be only preconditions for further negotiation—apparently, Defendants will reinstate funds only if Columbia complies with unspecified future conditions, and the germaneness of those future demands to the alleged violations remains unclear. The very vagueness of these demands is itself a First Amendment problem. *See NAACP v. Button*, 371 U.S. 415, 432 (1963) ("[S]tandards of permissible . . . vagueness are strict in the area of free

expression."). The government may not use the Spending Clause as an end run around its obligation not to violate the First Amendment and the academic freedom rights of funding recipients.

## **CONCLUSION**

In summarily cutting off funding to Columbia University, Defendants have acted contrary to law and in violation of the separation of powers. The Spending Clause does not permit the Executive to withhold funds inconsistent with requirements of statute or to impose new conditions of which Columbia lacked notice when it accepted funds, nor does it permit the Executive to impose unconstitutional conditions.

*Amici Curiae* urge the Court to grant the Plaintiffs' motion for a preliminary injunction.

Dated:   April 24, 2025                                        CLARICK GUERON REISBAUM LLP

                                                               _/s/ Gregory A. Clarick_____
                                                               Gregory A. Clarick
                                                               Nora Niedzielski-Eichner
                                                               41 Madison Avenue, 23rd Floor
                                                               New York, NY 10010
                                                               212-633-4310
                                                               gclarick@cgr-law.com
                                                               nniedzie@cgr-law.com

                                                               *Counsel for Amici Curiae Center for*
                                                               *Constitutional Governance, Kate Andrias,*
                                                               *Jessica Bulman-Pozen, and Olatunde*
                                                               *Johnson*

## **<u>CERTIFICATE OF COMPLIANCE</u>**

I hereby certify that the foregoing complies with Local Civil Rule 7.1(c) because it

contains 4,259 words exclusive of those sections exempted from the limitation of that rule.


Dated: April 24, 2025                    <u>    */s/ Gregory A. Clarick*    </u>
                                          GREGORY A. CLARICK

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 24, 2025, the foregoing document and all attachments were

filed with the Clerk of the Court, using the CM/ECF system, causing them to be served on all

parties.

Dated: April 24, 2025

<u>    /s/ Gregory A. Clarick            </u>
GREGORY A. CLARICK