# Exhibit A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| AMERICAN ASSOCIATION OF UNIVERSITY PROFESSORS, <br><br> and <br><br> AMERICAN FEDERATION OF TEACHERS, <br><br>　　　　　　　　　　Plaintiffs, <br><br>　　　　　　v. <br><br> UNITED STATES DEPARTMENT OF JUSTICE, *et al.*, <br><br>　　　　　　　　　　Defendants. | Case No. 1:25-cv-02429-MKV |

**BRIEF OF AMICUS CURIAE INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS**
<u>**IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**</u>

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................... iii

INTEREST OF AMICUS CURIAE ........................................................................................... 1

INTRODUCTION ....................................................................................................................... 2

ARGUMENT ............................................................................................................................... 4

    I.    Under *Bowen*, This Court Has Subject Matter Jurisdiction over Plaintiffs' APA Claims. ............................................................................................................. 5

    II.    The Tucker Act Does Not Divest This Court's Jurisdiction to Provide Complete Relief under the APA. ....................................................................................... 8

CONCLUSION ........................................................................................................................... 12

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Albrecht v. Comm. on Emp. Benefits of Fed. Rsrv. Emp. Benefits Sys.*,
   357 F.3d 62 (D.C. Cir. 2004) ................................................................................................9

*Am. Near E. Refugee Aid v. U.S. Agency for Int'l Dev.*,
   703 F. Supp. 3d 126 (D.D.C. 2023) ....................................................................................11

*Am. Pub. Health Ass'n v. Nat'l Insts. of Health*,
   No. 1:25-cv-10787 (D. Mass. Apr. 2, 2025) .........................................................................1

*Atterbury v. U.S. Marshals Serv.*,
   805 F.3d 398 (2d Cir. 2015) ....................................................................................10, 11, 12

*B.K. Instrument, Inc. v. United States*,
   715 F.2d 713 (2d Cir. 1983) ..................................................................................................9

*Bowen v. Massachusetts*,
   487 U.S. 879 (1988) ................................................................3, 4, 5, 6, 7, 8, 9, 11, 12

*Chi. Women in Trades v. Trump*,
   No. 25-C-2005, 2025 WL 1114466 (N.D. Ill. Apr. 14, 2025) ..............................................3

*Climate United Fund v. Citibank*,
   No. 25-cv-698 (TSC), 2025 WL 1131412 (D.D.C. April 16, 2025) .........................2, 3, 7, 10

*Cmty. Legal Servs. in E. Palo Alto v. Dep't of Health and Human Servs.*,
   No. 25-cv-02847-AMO, 2025 WL 1168898 (N.D. Cal. Apr. 21, 2025) ...............................3

*Cohen v. Postal Holdings, LLC*,
   873 F.3d 394 (2d Cir. 2017) ................................................................................................10

*County of Suffolk v. Sebelius*,
   605 F.3d 135 (2d Cir. 2010) ..................................................................................................6

*Dep't of Army v. Blue Fox, Inc.*,
   525 U.S. 255 (1999) ..............................................................................................................6

*Department of Education v. California*,
   145 S. Ct. 966 (2025) ..............................................................................................2, 3, 11, 12

*Maine v. Dep't of Agric.*,
   No. 1:25-cv-00131-JAW, 2025 WL 1088946 (D. Me. Apr. 11, 2025) ..........................2, 7, 8

*Me. Cmty. Health v. United States*,
   590 U.S. 296 (2020) ........................................................................................................4, 8

*Megapulse, Inc. v. Lewis*,
    672 F.2d 959 (D.C. Cir. 1982) ................................................................ 5, 9, 10, 11, 12

*Merrill v. Milligan*,
    142 S. Ct. 879 (2022) .................................................................................................. 2

*State of New York v. Trump*,
    No. 1:25-cv-39-JJM-PAS, 2025 WL 1098966 (D.R.I. Apr. 14, 2025) .................. 3, 5, 7, 11

*United States v. Mitchell*,
    463 U.S. 206 (1983) .................................................................................................... 4

*United States v. Sherwood*,
    312 U.S. 584 (1941) .................................................................................................... 4

*Up State Fed. Credit Union v. Walker*,
    198 F.3d 372 (2d Cir. 1999) ................................................................................... 9, 10

*Widakuswara v. Lake*,
    No. 1:25-cv-1015-RCL, 2025 WL 1166400 (D.D.C. Apr. 22, 2025) ................... 2, 3, 11

*Woonasquatucket River Watershed Council v. Dep't of Agric.*,
    No. 1:25-cv-00097-MSM-PAS, 2025 WL 1116157 (D.R.I. Apr. 15, 2025) ......... 3, 7, 8, 10

**Statutes**

5 U.S.C. § 702 .................................................................................................... 4, 5, 8, 11

5 U.S.C. § 704 ................................................................................................................ 12

5 U.S.C. § 706(2)(A) ........................................................................................................ 8

42 U.S.C. § 2000d-2 ......................................................................................... 7, 8, 11, 12

28 U.S.C. § 1346(a) ..................................................................................................... 2, 4

28 U.S.C. § 1491(a) ..................................................................................................... 2, 4

**INTEREST OF AMICUS CURIAE**

The International Union, United Automobile, Aerospace and Agricultural Implement Workers of America ("UAW") is one of the largest and most diverse unions in North America, with nearly 1,000,000 active and retired members throughout the United States, Canada and Puerto Rico and in virtually every sector of the economy. UAW and its affiliated locals represent approximately 120,000 workers in higher education—graduate students, postdoctoral scientists, researchers, university staff, and faculty—at more than 27 institutions across the country, including Harvard University, University of Pennsylvania, Princeton University, Columbia University, Icahn School of Medicine at Mt. Sinai, and many others. More than seventy-five thousand UAW-represented workers depend on federal research grant funding for their jobs. In addition to its long-standing support for workers' rights and civil rights in legislative battles since the 1930s, UAW has advocated for increased federal funding for scientific research due to its importance for innovation, economic growth, and public health.

The unprecedented nationwide termination of congressionally authorized federal research grants puts tens of thousands of UAW members' jobs at risk.[1] These members work under such federal grants to conduct research on cancer, diabetes, traumatic brain injury, muscle regeneration, Alzheimer's disease, airborne pollutants, and chronic disease, among other subjects. UAW seeks to ensure that jurisdiction over Administrative Procedures Act ("APA") claims challenging federal grant terminations or freezes may be vindicated in the federal district courts where its members are impacted.

---

[1] UAW is itself a plaintiff in a suit challenging federal research grant terminations. *See* Compl., *Am. Pub. Health Ass'n v. Nat'l Insts. of Health*, No. 1:25-cv-10787 (D. Mass. Apr. 2, 2025), ECF No. 1 (challenging certain directives issued by the National Institutes of Health which resulted in termination of federal research grants).

1

## INTRODUCTION

In this case—as in some two dozen other suits filed in the last two months challenging the Government's abrupt termination of billions of dollars of congressionally authorized grants—Plaintiffs argue that the Government's actions violate not only multiple Constitutional principles (including the First Amendment, Due Process, and separation of powers) but also that the Government has disregarded the APA's requirements that are intended to protect against improper government action. Compl. at 68–78, ECF No. 1. As in many of the related cases, Plaintiffs here have sought preliminary injunctive relief and have made compelling showings on each of the preliminary injunction factors.

The Government's litigation strategy in opposing such relief in other grant termination suits has been largely to ignore the substance of plaintiffs' causes of action. Instead, relying heavily on the Supreme Court's April 4, 2025, non-precedential[2] emergency stay order in *Department of Education v. California*, 145 S. Ct. 966 (2025), the Government has contended that district courts lack jurisdiction to adjudicate the merits of APA claims because the relief sought would have the effect of requiring monies to be transferred from the Government to plaintiffs. *See, e.g.*, *Maine v. Dep't of Agric.*, No. 1:25-cv-00131-JAW, 2025 WL 1088946, at *14–15 (D. Me. Apr. 11, 2025); *Climate United Fund v. Citibank*, No. 25-cv-698 (TSC), 2025 WL 1131412, at *11 (D.D.C. April 16, 2025). The Government argues that the Tucker Act, 28 U.S.C. §§ 1346(a), 1491(a), requires such claims be heard in the Court of Federal Claims, and that federal district courts lack jurisdiction. *Maine,* 2025 WL 1088946, at *14.

At least seven district courts have considered and rejected this argument following the

---

[2] An emergency stay order is "not a decision on the merits." *Merrill v. Milligan*, 142 S. Ct. 879, 879 (2022) (Kavanaugh, J., concurring). Thus, "*California* does not change the governing law." *Widakuswara v. Lake*, No. 1:25-cv-1015-RCL, 2025 WL 1166400, at *9 (D.D.C. Apr. 22, 2025)

2

Supreme Court's *California* stay order. *See, e.g.*, *id.* at *20 (finding jurisdiction over APA claims even when the relief requested would result in the payment of money); *State of New York v. Trump*, No. 1:25-cv-39-JJM-PAS, 2025 WL 1098966, at *2 (D.R.I. Apr. 14, 2025) ("That the Court's orders could give rise to the disbursement of funds to the States does not bar its jurisdiction under the APA."); *Chi. Women in Trades v. Trump*, No. 25-C-2005, 2025 WL 1114466, at *8 (N.D. Ill. Apr. 14, 2025) (Tucker Act is no barrier to the court's jurisdiction to order equitable relief); *Woonasquatucket River Watershed Council v. Dep't of Agric.*, No. 1:25-cv-00097-MSM-PAS, 2025 WL 1116157, at *1 (D.R.I. Apr. 15, 2025) (plaintiffs' APA claims "are not simple contract actions for money damages, such that the Tucker Act would divest the Court of jurisdiction."); *Climate United Fund*, 2025 WL 1131412, at *9 (plaintiffs' APA claims are not at their essence contract claims, so Tucker Act cannot divest district court of jurisdiction); *Cmty. Legal Servs. in E. Palo Alto v. Dep't of Health and Human Servs.*, No. 25-cv-02847-AMO, 2025 WL 1168898, at *3 (N.D. Cal. Apr. 21, 2025) (finding Tucker Act inapplicable because plaintiffs' claims are statutory and seek injunctive relief); *Widakuswara v. Lake*, No. 1:25-cv-1015-RCL, 2025 WL 1166400, at *9 (D.D.C. Apr. 22, 2025) (Tucker Act is not a bar to jurisdiction because plaintiffs are asserting statutory rights rather than contractual ones).

The Supreme Court's April 4 *per curiam* order, while granting the Government's application for a stay pending appeal, quoted and reaffirmed the central holding of *Bowen v. Massachusetts*, 487 U.S. 879 (1988). *See Dep't of Educ.*, 145 S. Ct. at 968. The Court's finding that the district court likely lacked jurisdiction in the *Department of Education* case was limited to the fact that the district court order sought "to enforce a contractual obligation to pay money." *Id.* (quoting *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 212 (2002)). That finding comports with *Bowen*, which remains controlling law and instructs that the relief on the

3

APA claims here—which do not seek "money damages" for breach of contractual obligations, but rather declaratory and injunctive relief for violations of constitutional, statutory and regulatory requirements—may proceed in federal district court.

## ARGUMENT

The United States, as sovereign, "is immune from suit save as it consents to be sued . . . and the terms of its consent to be sued in any court define the court's jurisdiction to entertain the suit." *United States v. Sherwood*, 312 U.S. 584, 586 (1941). Section 702 of the APA, as amended in 1976, provides the requisite waiver of sovereign immunity. *Bowen*, 487 U.S. at 891–92. It reads as follows: "An action in a court of the United States seeking relief other than money damages . . . shall not be dismissed nor relief therein denied on the ground that it is against the United States." 5 U.S.C. § 702. Section 702 also adds a condition to this broad grant of jurisdiction, stating that "[n]othing herein . . . confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." *Id.*

The Tucker Act itself provides a waiver of sovereign immunity in the Court of Federal Claims for certain money damages suits against the United States. *See United States v. Mitchell*, 463 U.S. 206, 212 (1983). The Act grants jurisdiction to the Court of Federal Claims over actions based "upon any express or implied contract with the United States," 28 U.S.C. § 1491(a), or arising from certain "money-mandating" statutes requiring the United States to compensate "a particular class of persons for past injuries or labors." *Me. Cmty. Health v. United States*, 590 U.S. 296, 324–25 (2020). The Act also provides that the Court of Federal Claims' jurisdiction over such contract actions is exclusive when damages exceed $10,000. 28 U.S.C. § 1346(a)(2).

Whether the APA's waiver of sovereign immunity applies to a particular suit in federal district court thus requires two separate but overlapping analyses. The first inquiry is whether the

4

APA claim is properly characterized as one for "money damages," to which no sovereign immunity waiver exists under the APA, or, conversely, is an "equitable suit" which falls within the sovereign immunity waiver of APA § 702. *Bowen*, 487 U.S. at 899–902. The second inquiry looks to whether the legal source of the claim is found in contract and the relief sought is in the nature of contract damages, such that the Tucker Act would confer exclusive jurisdiction in the Court of Claims. *See Megapulse, Inc. v. Lewis*, 672 F.2d 959 (D.C. Cir. 1982).

Here, this Court has jurisdiction over Plaintiffs' APA claims because they are founded on constitutional and statutory, rather than contractual, rights, and because they seek an injunction ordering "specific relief" to "the very thing to which [Plaintiffs were] entitled,"—*i.e.*, the research grants. Pls.' Mem. Supp. Prelim. Inj. at 11–17, ECF No. 26 (hereinafter "Pls.' Memo."); Pls.' Proposed Order at 3, ECF No. 25; *see Bowen*, 487 U.S. at 895, 897.

### I. Under *Bowen*, This Court Has Subject Matter Jurisdiction over Plaintiffs' APA Claims.

As *Bowen* remains the "guiding compass here," *see New York*, 2025 WL 1098966, at *2, we begin with a brief analysis of that opinion. In *Bowen*, the State of Massachusetts sued the Secretary of Health and Human Services under the APA to set aside the Secretary's disallowance of certain Medicaid reimbursements for medical and rehabilitation services. 487 U.S. at 883–92. In ruling for the State, the Court rejected the Secretary's argument that relief in the district court was foreclosed by APA § 702's exclusion of suits for "money damages." *Id.* at 892–901.[3] The Court noted that while the State's suit could be characterized as seeking, at least in part, "monetary relief," that was not synonymous with the term "money damages," which refers only

---

[3] The *Bowen* Court also rejected the Secretary's "novel submission that the entire action is barred by [APA] § 704 . . . because the doubtful and limited relief available in the Claims Court is not an adequate substitute for review in the District Court." 487 U.S. at 902; *see also infra* at n.6.

5

to compensatory relief for a suffered loss. *Id.* at 894–96. As the Court put it, "[t]he fact that a judicial remedy may require one party to pay money to another is not a sufficient reason to characterize the relief as 'money damages.'" *Id.* at 893–94; *cf. Dep't of Army v. Blue Fox, Inc.*, 525 U.S. 255, 262–63 (1999) (APA suit to enforce equitable lien against the Government was an action for "money damages" because "equitable liens by their nature constitute substitute or compensatory relief rather than specific relief . . . . An equitable lien does not 'give the plaintiff the very thing to which he was entitled.'" (quoting *Bowen*, 487 U.S. at 895)).

The Second Circuit, applying *Bowen*, has drawn the same line. It distinguishes between APA claims that seek "money damages" as relief, and those actions that, while seeking to enforce a governmental obligation, are in the nature of injunctive relief ordering transfer of the very funds authorized to be expended. *See County of Suffolk v. Sebelius*, 605 F.3d 135 (2d Cir. 2010). In *County of Suffolk*, plaintiffs brought an action under APA § 702 for declaratory and injunctive relief to direct the Secretary of Health and Human Services to return the counties to a grant program that would entitle them to disbursement of additional funds. *Id.* at 138–39. The Government argued that the district court lacked jurisdiction over the § 702 claim because it was subject to the exclusion for "money damages." *Id.* at 140. The Second Circuit rejected that argument on the ground that plaintiffs sought an order to pay the very money appropriated, *i.e.*, "to force HHS to return property to Nassau-Suffolk, where the *res* at issue is the funds appropriated by Congress for this grant program for FYs 2007 and 2008." *Id.* at 140–41.[4]

Were there any remaining doubts that the injunctive relief Plaintiffs seek under APA § 702 is consistent with the sovereign immunity waiver analysis of *Bowen*—even after the

---

[4] The court ultimately determined that plaintiffs' APA claim was moot because the appropriation for the program was exhausted prior to injunctive relief. *County of Suffolk*, 605 F.3d at 141–42.

Supreme Court's April 4 *per curiam* order—they are dispelled by the many recent district court decisions finding jurisdiction to enter preliminary orders enjoining grant terminations. *See, e.g.*, *New York*, 2025 WL 1098966, at *2 (applying *Bowen* after considering the April 4 *per curiam* order and maintaining jurisdiction to enforce injunction against "categorical freeze" of grant funds because "[t]his matter is a claim about process, not damages."); *Maine*, 2025 WL 1088946, at *1, *18–20 (analyzing *Bowen* and the *per curiam* order to conclude that Court had jurisdiction under § 702 to enjoin Government "from terminating, freezing, or otherwise interfering with the State's access to federal funds" unless it followed APA process requirements, notwithstanding that this injunctive relief "will likely result in monetary payments"); *Climate United Fund*, 2025 WL 1131412, at *10 ("Plaintiffs seek access to funds they are presently entitled to, rather than money in compensation for [their] losses." (internal quotations omitted)); *Woonasquatucket*, 2025 WL 1116157, at *14 ("Nonprofits' primary purpose in bringing their claims is to seek equitable, not monetary, relief. They do not bring claims for past pecuniary harms.").

In the case before this Court—as with other cases in which plaintiffs seek preliminary relief under the APA against wholesale Government terminations or "freezes" of federal grants—Plaintiffs seek relief from the Government's violation of procedural requirements set forth in the APA, Title VI, and accompanying regulations. *See* Pls.' Memo. at 11–17, ECF No. 26. And the proposed order to enforce the APA likewise seeks to enjoin Defendants, *inter alia*, from enforcing their unlawful decision to terminate or cancel federal grants and to forbid Defendants from further terminating or interfering with such grants without following applicable procedural and substantive requirements. Pls.' Proposed Order at 3, ECF No. 25. Plaintiffs are not attempting to enforce any contractual obligations or seeking damages in compensation for any losses they may have suffered. While the consequence of the injunction might well include

7

payment of money, under *Bowen* and its progeny, nothing in Plaintiffs' APA claims or the relief sought through the injunction constitutes "money damages," and nothing in the April 4 *per curiam* order suggests otherwise. *Woonasquatucket*, 2025 WL 1116157, at *14 n.6 (["T]he Court declines to hold that the Supreme Court overruled *Bowen* and its progeny via stay order.").

II. **The Tucker Act Does Not Divest This Court's Jurisdiction to Provide Complete Relief under the APA.**

As noted above, the APA's waiver of sovereign immunity is curtailed if "if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." 5 U.S.C. § 702. In other grant freeze cases, the Government has argued that this exception, combined with the Tucker Act's waiver of sovereign immunity for actions based on contracts with the United States, impliedly forbids plaintiffs from obtaining injunctive relief under the APA. *See Maine*, 2025 WL 1088946, at *14–15. But this exception to § 702 has limited application with regard to the Tucker Act, because the "Tucker Act yields when the obligation-creating statute provides its own detailed remedies, or when the Administrative Procedure Act provides an avenue for relief." *Me. Cmty. Health*, 590 U.S. at 323–24 (citation omitted).

Here, Plaintiffs' statutory causes of action explicitly provide for APA review. Title VI of the Civil Rights Act expressly provides for judicial review under the APA of any action "terminating or refusing to grant or to continue financial assistance upon a finding of failure to comply with" Title VI, 42 U.S.C. § 2000d-2. 42 U.S.C. § 2000d-2. Section 706 of the APA allows district courts to "hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

Indeed, in *Bowen*, the Court found that the "policies of the APA take precedence over the purposes of the Tucker Act. In the conflict between two statutes, established principles of statutory construction mandate a broad construction of the APA and a narrow interpretation of

8

the Tucker Act." 487 U.S. at 908 n.46 (quoting with approval *Del. Div. of Health & Soc. Servs. v. U.S. Dep't of Health & Hum. Servs.*, 665 F. Supp. 1104, 1117–18 (D. Del. 1987)). Under these circumstances, the Tucker Act cannot be read to "impliedly forbid" the very avenue for relief that the obligation-creating statutes that Plaintiffs rely upon here expressly set forth.

To be sure, the Tucker Act does foreclose APA relief for a limited class of claims. Courts have acknowledged that litigants may seek to disguise contract-based claims as APA claims to seek equitable relief in a district court that would not be available in the Court of Federal Claims. *See, e.g.*, *B.K. Instrument, Inc. v. United States*, 715 F.2d 713, 727–28 (2d Cir. 1983); *Up State Fed. Credit Union v. Walker*, 198 F.3d 372, 375–77 (2d Cir. 1999). In this narrow context, the Tucker Act may "impliedly forbid" injunctive relief when an APA claim "is essentially a contract action." *Albrecht v. Comm. on Emp. Benefits of Fed. Rsrv. Emp. Benefits Sys.*, 357 F.3d 62, 68 (D.C. Cir. 2004). But courts must be "careful not to subvert the congressional objectives underlying the enactment of [§ 702] by allowing the government to give an overly expansive scope to the notion of claims 'founded upon' contract." *B.K. Instrument, Inc.*, 715 F.2d at 727.

In considering whether a claim against the United States is "at its essence" a disguised contract action subject to the Tucker Act's jurisdictional limitations, courts often employ a two-part test. They examine (1) the source of the rights upon which the plaintiff bases its claims and (2) the type of relief sought. *Megapulse*, 672 F.2d at 968; *see also Walker*, 198 F.3d at 375 (adopting the *Megapulse* test). In applying this test, courts have noted that "contract issues may arise in various types of cases where the action itself is not founded on a contract," but "the mere existence of such contract-related issues" does not mean that an action is at its essence a disguised contract action. *Megapulse*, 672 F.2d at 968–69. If the plaintiff's claim is not "based on rights derived from a contract," or if the remedies sought by the plaintiff are not "fundamentally

9

contractual in nature," then the claim is not barred by the Tucker Act. *Atterbury v. U.S. Marshals Serv.*, 805 F.3d 398, 408 (2d Cir. 2015).

Accordingly, courts have repeatedly reemphasized that the Tucker Act does not bar a claim when the plaintiff's source of rights is statutory, regulatory, or constitutional, rather than solely contractual—including district courts that have considered this issue following the Supreme Court's April 4 *per curiam* order. *See Climate United Fund*, 2025 WL 1131412, at *9 (finding that Tucker Act did not bar claims over termination of federal grant funding because they were based on rights "under the APA, the U.S. Constitution, and various statutes and regulations," such that the court did not "look solely to any contract"); *Woonasquatucket*, 2025 WL 1116157, at *13 (finding that plaintiffs' claims turn on federal statutes and regulations, rather than on terms of a contract); *Megapulse*, 672 F.2d at 969 (finding that plaintiff's claims were not, in essence, contract claims because they relied on statutory rights under the Trade Secrets Act, rather than rights under a contract); *Atterbury*, 805 F.3d at 406–07 (finding that Due Process Clause of the Fifth Amendment provides a basis for the claim independent of any contract).

Likewise, the Second Circuit has found that a claim is based on contract only when it "stems from no independent, non-contractual source." *Walker*, 198 F.3d at 376–77 (finding plaintiff's right was based solely on its lease with the Army; no other statute or regulation provided the plaintiff with any cause of action); *see also Cohen v. Postal Holdings, LLC*, 873 F.3d 394, 403 (2d Cir. 2017) (dismissing claims as contractual because the complaint's sole basis for the claims was a lease). And any potential argument that Plaintiffs *could* have brought contractual claims is unavailing, as the Second Circuit has held that "the question of APA jurisdiction does not turn on whether the plaintiff could conceivably have based his claim on a government contract. Instead, the appropriate inquiry is whether the claim is validly based on

10

grounds other than a contractual relationship with the government." *Atterbury*, 805 F.3d at 407; *see also Bowen*, 487 U.S. at 910 n.48 ( "[T]he fact that the purely monetary aspects of the case" could be brought in the Court of Federal Claims did not bar district court jurisdiction.).

It is thus clear that the Tucker Act does not divest this Court of jurisdiction in this case. Plaintiffs' APA claims rest on two statutes: Title VI of the Civil Rights Act, which grants "any person aggrieved" by termination of federal grants through the Title VI enforcement process the right to obtain judicial review of the termination in accordance with the APA, 42 U.S.C. § 2000d-2, and the APA itself, which grants any person "adversely affected or aggrieved by agency action" the right to judicial review thereof, 5 U.S.C. § 702. Plaintiffs do not assert any rights based on any term or condition of any specific grant or contract;[5] in this case, as in *New York*, "the terms and conditions of each individual grant . . . *are not at issue*." 2025 WL 1098966, at *2 (emphasis in original). By contrast, in *Department of Education v. California*, "the source of the rights relied on by the plaintiffs were contained *in the grant agreements*." *Widakuswara*, 2025 WL 1166400, at *9 (emphasis in original).

Because Plaintiffs' APA claims are not based on rights derived from a contract, the remedies sought in their preliminary injunction motion are likewise not fundamentally contractual. *See Megapulse*, 672 F.2d at 971 ("[S]o long as an action brought against the United States or an agency thereof is not one that should be classified from the outset as a 'contract action' for Tucker Act purposes, its remedies are also not contract-related . . . ."). Plaintiffs'

---

[5] Even if Plaintiffs had brought APA claims that relied solely on grant terms, courts have held that federal grants are not generally contracts unless they provide a "tangible and direct, rather than generalized or incidental" benefit to the government. *Am. Near E. Refugee Aid v. U.S. Agency for Int'l Dev.*, 703 F. Supp. 3d 126, 132 (D.D.C. 2023). This comports with *Bowen*'s finding that Congress specifically intended § 702 to waive sovereign immunity for claims regarding the "administration of Federal grant-in-aid programs." 487 U.S. at 900 (quoting H.R. Rep. No. 1656, 94th Cong., 2d Sess. 9 (1976); S. Rep. No. 996, 94th Cong., 2d Sess. 8 (1976)).

11

motion seeks injunctive relief enjoining Defendants from undertaking or giving effect to actions that would violate Plaintiffs' rights under Title VI and its accompanying regulations, including interfering with grants without following applicable procedural and substantive requirements. Pls.' Proposed Order at 3–6, ECF No. 25. These "equitable" remedies are not available in contract. *Atterbury*, 805 F.3d at 408.[6]

## CONCLUSION

For the foregoing reasons, this Court has subject matter jurisdiction to enforce Plaintiffs' APA claims and to grant their Motion for Preliminary Injunction.

DATED: April 24, 2025

Respectfully submitted,

/s/*Caitlin Kekacs*
Caitlin Kekacs
Swapnil Agrawal*
**Bredhoff & Kaiser P.L.L.C.**
805 Fifteenth St. NW, Suite 1000
Washington, D.C. 20005-2207
(202) 842-2600
ckekacs@bredhoff.com
sagrawal@bredhoff.com

*Attorneys for UAW*

*Pro hac vice motion pending

---

[6] In the same vein, APA review is available only when "there is no other adequate remedy in a court." 5 U.S.C. § 704. But that is no barrier to the Court's jurisdiction to grant the relief sought here. *Bowen* directly addressed this exception to the APA's waiver of sovereign immunity, explaining that Congress "did not intend that general grant of jurisdiction to duplicate the previously established special statutory procedures relating to specific agencies." 487 U.S. at 903. This exception, the Court emphasized, "should not be construed to defeat the central purpose of providing a broad spectrum of judicial review of agency action." *Id.* Thus, while the "APA's limited waiver of immunity does not extend to orders 'to enforce a contractual obligation to pay money,'" as an 'adequate remedy' already exists for such actions, *Dep't of Educ.*, 145 S. Ct. at 968 (quoting *Great-West Life*, 534 U.S. at 212), this limitation has no bearing on the relief that Plaintiffs seek here. Because Plaintiffs could not obtain the remedies they seek in the Court of Federal Claims, § 704 cannot divest this Court of jurisdiction.