## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

AMERICAN ASSOCIATION OF UNIVERSITY
PROFESSORS,

and

AMERICAN FEDERATION OF TEACHERS,

          Plaintiffs,

          v.

UNITED STATES DEPARTMENT OF JUSTICE, *et
al.*,

          Defendants.

Case No. 1:25-cv-02429-MKV

**PLAINTIFFS' REPLY
MEMORANDUM IN SUPPORT
OF MOTION FOR
PRELIMINARY INJUNCTION**

**Oral Argument Requested**

**TABLE OF CONTENTS**

TABLE OF CONTENTS.................................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................................ ii

INTRODUCTION ......................................................................................................................... 1

ADDITIONAL FACTS ................................................................................................................. 1

ARGUMENT ................................................................................................................................. 2

    I.    Plaintiffs Have Standing. ............................................................................................... 2

          A. Article III Standing. ............................................................................................ 2

          B. Prudential Standing. ........................................................................................... 3

    II.    This Court Has Jurisdiction Over Plaintiffs' Statutory and Constitutional Claims. ....... 4

    III.    Plaintiffs Are Likely to Succeed on the Merits. ............................................................ 8

          A. APA Claims. ...................................................................................................... 8

          B. First Amendment ............................................................................................. 12

          C. Other Claims. .................................................................................................. 14

    IV.    Plaintiffs and Their Members Will Suffer Irreparable Harm without Relief. .............. 15

    V.    The Balance of Equities and Public Interest Support Preliminary Injunctive Relief. .. 15

CONCLUSION ............................................................................................................................ 15

CERTIFICATE OF COMPLIANCE .......................................................................................... 18

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AACTE v. McMahon,*
  2025 WL 833917 (D. Md. Mar. 17, 2025)..................................................................................11

*Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.,*
  570 U.S. 205 (2013)...................................................................................................................14

*AIDS Vaccine Advocacy Coal. v. U.S. Dep't of State,*
  2025 WL 752378 (D.D.C. Mar. 10, 2025)..................................................................................4

*Am. Postal Workers Union, AFL-CIO v. U.S. Postal Serv.,*
  766 F.2d 715 (2d Cir. 1985).....................................................................................................15

*Atterbury v. U.S. Marshal Serv.,*
  805 F.3d 398 (2d Cir. 2015)............................................................................................5, 6, 7, 8

*B.K. Instrument, Inc. v. U.S.,*
  715 F.2d 713 (2d Cir. 1983).......................................................................................................8

*Bantam Books, Inc. v. Sullivan,*
  372 U.S. 58 (1963)...............................................................................................................12, 13

*Bd. of Pub. Instruction of Taylor Cnty., Fla. v. Finch,*
  414 F.2d 1068 (5th Cir. 1969) ..............................................................................................4, 5, 9

*Bennett v. Spear,*
  520 U.S. 154 (1997)....................................................................................................................3

*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,*
  403 U.S. 388 (1971)....................................................................................................................7

*Bloch v. Bouchey,*
  2023 WL 9058377 (D. Vt. Dec. 28, 2023) ...............................................................................15

*Bowen v. Massachusetts,*
  487 U.S. 879 (1988)........................................................................................................5, 6, 7, 8

*California v. U.S. Dep't of Educ.,*
  132 F.4th 92 (1st Cir. 2025).....................................................................................................6, 8

*Chem Serv., Inc. v. Env't Monitoring Sys. Lab'y,*
  12 F.3d 1256 (3d Cir. 1993).....................................................................................................11

*Climate United Fund v. Citibank, N.A.*,
  2025 WL 1131412 (D.D.C. Apr. 16, 2025)........................................................................2, 8, 15

*Cmty. Legal Servs. In East Palo Alto v. HHS*,
  2025 WL 1233674 (N.D. Cal. Apr. 29, 2025).............................................................................6

*Conn. Dep't of Env't Prot. v. OSHA*,
  356 F.3d 226 (2d Cir. 2004)......................................................................................................15

*Crowley Gov. Servs. v. GSA*,
  38 F.4th 1099 (D.C. Cir. 2022)................................................................................................6, 7

*Cubilete v. U.S.*,
  469 F.Supp.3d 13 (E.D.N.Y. 2020) ............................................................................................7

*Dep't of Com. v. New York*,
  588 U.S. 752 (2019)...................................................................................................................14

*Dep't of Education v. California*,
  145 S. Ct. 966 (2025)................................................................................................................6, 7

*Dube v. State Univ. of N.Y.*,
  900 F.2d 587 (2d Cir. 1990)......................................................................................................13

*Dugan v. Rank*,
  372 U.S. 609 (1963).....................................................................................................................4

*Env't Def. v. EPA*,
  369 F.3d 193 (2d Cir. 2004)...................................................................................................9, 10

*FDA v. Brown & Williamson Tobacco Corp.*,
  529 U.S. 120 (2000).....................................................................................................................9

*Fed. Defs. of N.Y., Inc. v. Fed. Bureau of Prisons*,
  954 F.3d 118 (2d Cir. 2020).........................................................................................................3

*G.L. Christian & Assocs. v. U.S.*,
  320 F.2d 345 (Ct. Cl. 1963)......................................................................................................10

*Gondal v. DHS*,
  343 F. Supp. 3d 83 (E.D.N.Y. 2018) .......................................................................................14

*Gonzales v. Oregon*,
  546 U.S. 243 (2006).....................................................................................................................9

*Great-West Life & Annuity Ins. Co. v. Knudson*,
  534 U.S. 204 (2002).....................................................................................................................7

*Greenwich Citizens Comm. v. Ctys. of Warren*,
    77 F.3d 26 (2d Cir. 1996)..................................................................................................12, 13

*Havens Realty Corp. v. Coleman*,
    455 U.S. 363 (1982)..........................................................................................................3

*Healthy Teen Network v. Azar*,
    322 F. Supp. 3d 647 (D. Md. 2018).................................................................................10

*Hillside Metro Assocs., LLC v. JPMorgan Bank, Nat. Ass'n*,
    747 F.3d 44 (2d Cir. 2014)................................................................................................4

*Jones v. Parmley*,
    465 F.3d 46 (2d Cir. 2006)..............................................................................................12

*Keepers, Inc. v. City of Milford*,
    807 F.3d 24 (2d Cir. 2015)................................................................................................4

*Laird v. Tatum*,
    408 U.S. 1 (1972)..............................................................................................................2

*Larson v. Domestic & Foreign Commerce Corp.*,
    337 U.S. 682 (1949)..........................................................................................................4

*League of Women Voters of U.S. v. Newby*,
    838 F.3d 1 (D.C. Cir. 2016)............................................................................................15

*LeBlanc v. United States*,
    50 F.3d 1025 (Fed. Cir. 1995)...........................................................................................5

*Lincoln v. Vigil*,
    508 U.S. 182 (1993)..........................................................................................................8

*Manuel v. United States*,
    115 Fed. Cl. 105 (Cl. Ct. 2014) ....................................................................................4, 5

*Md. Dep't of Human Resources v. HHS*,
    763 F.2d 1441 (D.C. Cir. 1985)........................................................................................5

*Me. Cmty. Health Options v. United States*,
    590 U.S. 296 (2020)..........................................................................................................5

*Megapulse, Inc. v. Lewis*,
    672 F.2d 959 (D.C. Cir. 1982)...................................................................................5, 7, 8

*Milk Train, Inc. v. Veneman*,
    310 F.3d 747 (D.C. Cir. 2002)..........................................................................................8

*N.Y. State Citizens' Coal. for Child. v. Poole*,
  922 F.3d 69 (2d Cir. 2019)..........................................................................................................4

*Nat'l Ass'n of Diversity Officers in Higher Educ. v. Trump*,
  2025 WL 573764 (D. Md. Feb. 21, 2025) ...................................................................................15

*Nat'l Educ. Ass'n v. U.S. Dep't of Educ.*,
  2025 WL 1188160 (D.N.H. Apr. 24, 2025)..............................................................................2, 3

*New York v. DHS*,
  969 F.3d 42 (2d Cir. 2020)......................................................................................................3, 4

*Normandy Apts., Ltd. v. HUD*,
  554 F.3d 1290 (10th Cir. 2009) ..............................................................................................6, 7

*NRA v. Vullo*,
  602 U.S. 175 (2024)......................................................................................................3, 12, 13

*Okwedy v. Molinari*,
  333 F.3d 339 (2d Cir. 2003)....................................................................................................12

*Overview Books, LLC v. U.S.*,
  755 F.Supp.2d 409 (E.D.N.Y. 2010) ........................................................................................6

*Pacito v. Trump*,
  2025 WL 893530 (W.D. Wash. Mar. 24, 2025) ...................................................................8, 10

*PETA v. Tabak*,
  662 F. Supp. 3d 581 (D. Md. 2023).............................................................................................8

*Planned Parenthood of Greater Wash. & N. Idaho v. HHS*,
  328 F. Supp. 3d 1133 (E.D. Wash. 2018)..................................................................................10

*Planned Parenthood of N.Y.C. v. HHS*,
  337 F. Supp. 3d 308 (S.D.N.Y. 2018) .........................................................................................8

*Pol'y & Rsch., LLC v. HHS*,
  313 F. Supp. 3d 62 (D.D.C. 2018).............................................................................................10

*Presidential Gardens Assocs. v. U.S. ex rel. Sec'y of HUD*,
  175 F.3d 132 (2d Cir. 1999).........................................................................................................7

*Rick's Mushroom Service, Inc. v. United States*,
  521 F.3d 1338 (Fed. Cir. 2008)....................................................................................................6

*RNC v. N.C. State Bd. of Elections*,
  120 F.4th 390 (4th Cir. 2024) ......................................................................................................3

*Rosenberger v. Rector & Visitors of Univ. of Va.*,
  515 U.S. 819 (1995)........................................................................................................14

*S.F. Unified Sch. Dist. v. Americorps*,
  2025 WL 1180729 (N.D. Cal. Apr. 23, 2025)........................................................5, 6

*Sauerhaft v. Bd. of Educ.*,
  2009 WL 1576467 (S.D.N.Y. June 2, 2009) ............................................................13

*Schilling v. U.S. House of Reps.*,
  102 F.4th 503 (D.C. Cir. 2024)....................................................................................4

*Schlafly v. Volpe*,
  495 F.2d 273 (7th Cir. 1974) ........................................................................................4

*Sharp v. Weinberger*,
  798 F.2d 1521 (D.C. Cir. 1986)....................................................................................6

*State Farm Mut. Auto. Ins. Co. v. Tri-Borough NY Med. Prac. P.C.*,
  120 F.4th 59 (2d Cir. 2024) ........................................................................................15

*Tootle v. Sec'y of Navy*,
  446 F.3d 167 (D.C. Cir. 2006)......................................................................................5

*United States v. Connolly*,
  716 F.2d 882 (Fed. Cir. 1983) (en banc)......................................................................5

*Up State Fed. Credit Union v. Walker*,
  198 F.3d 372 (2d Cir. 1999)......................................................................................5, 7

*USA Network v. Jones Intercable, Inc.*,
  704 F. Supp. 488 (S.D.N.Y. 1989) .............................................................................15

*West Virginia v. EPA*,
  597 U.S. 697 (2022)....................................................................................................10

*Westchester v. HUD*,
  778 F.3d 412 (2d Cir. 2015)..........................................................................................8

*Widakuswara v. Lake*,
  2025 WL 945869 (S.D.N.Y. Mar. 28, 2025) .............................................................15

*Woonasquatucket River Watershed Council v. USDA*,
  2025 WL 1116157 (D.R.I. Apr. 15, 2025) ....................................................6, 10, 15

*Zeno v. Pine Plains Cent. Sch. Dist.*,
  702 F.3d 655 (2d Cir. 2012)........................................................................................13

**Statutes**

5 U.S.C. §702....................................................................................................................4, 5

5 U.S.C. §704....................................................................................................................4, 8

5 U.S.C. §706..................................................................................................................4, 11

20 U.S.C. §1232...................................................................................................................11

28 U.S.C. §1331.....................................................................................................................4

28 U.S.C. §1491.....................................................................................................................4

42 U.S.C. §241.......................................................................................................................6

42 U.S.C. §2000d-1.............................................................................................................10

42 U.S.C. §2000d-2...........................................................................................................4, 8

**Regulations**

2 C.F.R. §200.208...............................................................................................................11

2 C.F.R. §200.339...............................................................................................................11

2 C.F.R. §200.340..............................................................................................6, 9, 10, 11

2 C.F.R. §200.342...............................................................................................................10

2 C.F.R. §3474.1.................................................................................................................11

34 C.F.R. §75.105...............................................................................................................11

45 C.F.R. §75.207...............................................................................................................11

45 C.F.R. §75.371...............................................................................................................11

45 C.F.R. §75.372...............................................................................................................10

45 C.F.R. §75.374...............................................................................................................10

89 Fed. Reg. 80055.............................................................................................................10

## INTRODUCTION

The executive branch is engaged in an unprecedented campaign to alter the balance of ideas and viewpoints expressed on private university campuses—and it is using termination of federal funding to force Columbia and other universities to comply, in violation of the First Amendment. Congress enacted robust procedures in Title VI to prevent precisely this kind of coercion, by constraining the sweeping power that the threat of funding termination could otherwise give the government. Defendants concede that they terminated funds based on the claim that Columbia failed to prevent antisemitism. That means Title VI applies. Defendants' argument that a vague agency regulation lets them evade Congress's specific commands is unavailing. So are Defendants' contentions that this Court lacks jurisdiction to prevent documented irreparable harm and to adjudicate the vital statutory and constitutional questions presented here. Defendants' actions take aim at the fabric of our free society and the rule of law. The motion for preliminary injunctive relief should be granted.

## ADDITIONAL FACTS

It is now seven weeks since Columbia capitulated to many of Defendants' demands, yet Defendants have not restored the vast majority of the $400 million in terminated funds. Exs. 78, 79;[1] Martin Supp. Decl. ¶5 (ED); Witness-L Decl. ¶¶7-9 (GSA); *accord* Lorsch Decl. (ECF 92) ¶19. Instead, Defendants have halted future funding without telling Columbia "whether or why the funds are frozen." Exs. 62, 63, 74, 75; Jacobs Decl. ¶¶15-25, 29-31.

As intended, Defendants' actions have impacted campus speech. The government's demands reportedly seek "viewpoint diversity among Columbia's faculty." Ex. 80. Columbia says it is still negotiating over Defendants' "overly prescriptive requests about our governance and how specifically to address viewpoint diversity issues." Ex. 66. But it has begun to appease the government by implementing its March 21 promises (Ex. 27). Witness-J Decl. ¶¶2-7; Exs. 71, 72.

Emboldened by Columbia's acquiescence, Defendants issued outrageous demands to

---

[1] Unless otherwise indicated, cites to "Ex." are to exhibits to the Rosenthal Declaration (ECF 47 to 52-11, Exs. 1-61) and the Reply Rosenthal Declaration (Exs. 62-80).

Harvard university and cut funding when it refused to obey. Exs. 64, 67, 68. They have frozen grants for many more (Exs. 69, 70), clarifying their modus operandi of withholding funding to coerce compliance with escalating viewpoint-based demands. For example, Defendants demanded that Harvard retain a third party "to audit the student body, faculty, staff, and leadership for viewpoint diversity." Ex. 64. Defendants have targeted universities based on viewpoints expressed by their faculty. *See* Exs. 65, 69, 70, 73, 76, 77. "The goal, one senior administration official said, was to make examples of elite schools to intimidate other universities." Ex. 65.

## ARGUMENT

### I.    Plaintiffs Have Standing.

**A.   Article III Standing.** *First*, each Plaintiff has associational standing to redress its members' injuries. Plaintiffs' members face imminent, concrete harms from Defendants' threats and cancelation of funding. *See* ECF 26 ("Mot.") at 9-10; Wolfson Supp. Decl. ¶¶4-7; *Climate United Fund v. Citibank, N.A.*, 2025 WL 1131412, *6-7 (D.D.C. Apr. 16, 2025). Those harms extend beyond loss of money. *See* Wolfson Supp. Decl. ¶6 (summarizing nonmonetary harms); Witness-K Decl. ¶¶8-15 (impacts on medical research); Jacobs Decl. ¶¶26, 31 (disruption of clinical trial); Witness-M Decl. ¶¶8-20 (same); Witness-L Decl. ¶¶12-13 (impacts on data); Witness-N Decl. ¶¶17-21 (lost expertise and impact on recruiting); Daw Decl. ¶¶13-18 (impacts on partnerships, informed policymaking, and community-oriented research); Witness-O Decl. ¶¶9-23 (harms to partners, policymaking, junior researchers, and mentees); Greenleaf Decl. ¶¶10-14 (medical impact from stress and loss of career development opportunities).

Defendants' actions also threaten harm to Plaintiffs' members' speech rights, by impairing their ability to conduct independent research and causing a pervasive chill. *See* Wolfson Supp. Decl. ¶7 (summarizing evidence); *Laird v. Tatum*, 408 U.S. 1, 11 (1972) (individual can challenge "exercise of governmental power" that causes "deterrent, or 'chilling,' effect" where "presently or prospectively subject to" challenged "regulations, proscriptions, or compulsions"); *Nat'l Educ. Ass'n v. U.S. Dep't of Educ.*, 2025 WL 1188160, at *14 (D.N.H. Apr. 24, 2025) (NEA had associational standing based on members' self-censorship from threats to cut funding). These

harms are far from speculative; they are backed by recent experience. Columbia already acceded to Defendants' initial speech-curtailing demands. Ex. 27. Defendants' ongoing insistence that Columbia do even *more*, or lose *all* federal funds, presents imminent threats to faculty rights. Ex. 66, 78; Daw Decl. ¶18; Witness-L Decl. ¶15; Witness-J Decl. ¶10; Witness-K Decl. ¶16.

> **Second**, each Plaintiff independently has organizational standing. An "organization establishes injury-in-fact if, as here, it establishes that it spent money to combat activity that harms its … core activities." *New York v. DHS*, 969 F.3d 42, 61 (2d Cir. 2020). Defendants do not dispute that their actions harm Plaintiffs' core activities. ECF 91 ("Opp.") at 8. As in *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982), Defendants' actions frustrate Plaintiffs' ability to provide effective counseling, support, and other services to their members, while also impairing Plaintiffs' mission. *See Nat'l Educ. Ass'n*, 2025 WL 1188160, at *9-10; *RNC v. N.C. State Bd. of Elections*, 120 F.4th 390, 397 (4th Cir. 2024); Wolfson Supp. Decl. ¶¶8-11; Schmid Supp. Decl. ¶¶3-4.

> Defendants argue that Plaintiffs' and their members' harms are not traceable to Defendants. But those harms are caused directly by Defendants' funding cuts and coercive demands that Columbia do more to curtail speech. *See Bennett v. Spear*, 520 U.S. 154, 169 (1997) ("injury produced by determinative or coercive effect upon the action of someone else" satisfies fairly traceable requirement); *NRA v. Vullo*, 602 U.S. 175, 191-92 (2024) (plaintiff can seek relief for government's "coercion of a third party").

> **B. Prudential Standing.** Plaintiffs seek to enforce their members' and their own rights under Title VI and the Constitution. The APA gives plaintiffs the right to pursue interests protected by Title VI. *See Fed. Defs. of N.Y., Inc. v. Fed. Bureau of Prisons*, 954 F.3d 118, 128 (2d Cir. 2020) (right to sue under APA if plaintiff's interests "arguably" "fall within the 'zone of interests to be protected or regulated by the statute'" at issue). Title VI's procedural requirements protect the interests of individuals like Plaintiffs' members who rely on federal funding to conduct research and pursue their callings. By expressly providing for judicial review for "any person aggrieved" by action to withdraw federal funds, Title VI "includes within the zone of interests to be protected the interests of virtually all persons satisfying the first requirement of standing," *i.e.*,

injury-in-fact. *Schlafly v. Volpe*, 495 F.2d 273, 277 (7th Cir. 1974). "[T]he purpose of limiting the [Title VI] termination power to 'activities which are actually discriminatory or segregated' was not for the protection of the … entity whose funds might be cut off, but for the protection of the innocent beneficiaries of programs not tainted by discriminatory practices." *Bd. of Pub. Instruction of Taylor Cnty., Fla. v. Finch*, 414 F.2d 1068, 1075-76 (5th Cir. 1969). Title VI also protects the interests of Plaintiffs as organizations because they are among "those who in practice can be expected to police the interests that the statute protects." *New York*, 969 F.3d at 63.[2] Plaintiffs' constitutional claims similarly seek to vindicate Plaintiffs' and their members' rights. Mot. 19-27.

Plaintiffs' injuries also give them prudential standing to enforce the rights of other faculty, students, and Columbia based on their close relationship and those parties' "practical disincentive to sue," including a well-founded "fear of reprisal" created by Defendants' intense coercive pressure. *N.Y. State Citizens' Coal. for Child. v. Poole*, 922 F.3d 69, 75 (2d Cir. 2019); *see Keepers, Inc. v. City of Milford*, 807 F.3d 24, 42 (2d Cir. 2015) (fear of "threats, harassment, or reprisals").

## II.    This Court Has Jurisdiction Over Plaintiffs' Statutory and Constitutional Claims.

Defendants' Tucker Act arguments are misplaced. Plaintiffs do not seek to enforce contract terms but rather their rights under Title VI and the Constitution. This Court has jurisdiction over such statutory and constitutional claims for equitable relief. *See* 42 U.S.C. §2000d-2 (providing for "judicial review … in accordance with [the APA]" of any action "terminating or refusing to grant or to continue financial assistance" based on a purported Title VI violation); 5 U.S.C. §§702, 704, 706; 28 U.S.C. §1331; *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 689 (1949); *Dugan v. Rank*, 372 U.S. 609, 621-22 (1963).[3] The Court of Federal Claims ("Claims Court") does not. *See* 28 U.S.C. §1491(a)(1); *Manuel v. United States*, 115 Fed. Cl. 105, 114 (Cl.

---

[2] *See also* Mot. 13 (amicus participation at hearings); Wolfson Decl. (ECF 27) ¶21; Schmid Decl. (ECF 28) ¶15; Martin Decl. (ECF 29) ¶¶7-8. Unlike in *Hillside Metro Assocs., LLC v. JPMorgan Bank, Nat. Ass'n*, 747 F.3d 44 (2d Cir. 2014) (Opp. 11), Plaintiffs do not seek to enforce contract terms.

[3] The Government has in other cases conceded that the Tucker Act "does not bear on … constitutional claims." *AIDS Vaccine Advocacy Coal. v. U.S. Dep't of State*, 2025 WL 752378, at *7 n.6 (D.D.C. Mar. 10, 2025). While the Tucker Act affects the scope of the APA's waiver of sovereign immunity, where a plaintiff challenges a federal officer's conduct as unconstitutional or *ultra vires*, "there is no sovereign immunity to waive—it never attached in the first place." *Schilling v. U.S. House of Reps.*, 102 F.4th 503, 506 (D.C. Cir. 2024).

Ct. 2014) (no Claims Court jurisdiction over Title VI claims); *United States v. Connolly*, 198 F.2d 882, 886-87 (Fed. Cir. 1983) (en banc) (First Amendment claims); *LeBlanc v. United States*, 50 F.3d 1025, 1028 (Fed. Cir. 1995) (due process and separation-of-powers). This Court should "categorically reject the suggestion that a federal district court can be deprived of jurisdiction by the Tucker Act when no jurisdiction lies in the Court of Federal Claims." *Tootle v. Sec'y of Navy*, 446 F.3d 167, 176-77 (D.C. Cir. 2006); *see Md. Dep't of Human Resources v. HHS*, 763 F.2d 1441, 1449 (D.C. Cir. 1985). Defendants have not cited any case holding that the Tucker Act bars district court jurisdiction over First Amendment or Title VI claims.

The Tucker Act does not "impliedly" divest this Court of jurisdiction simply because federal grants and contracts are at issue; federal funding agreements would be at issue in every Title VI claim involving unlawful termination. *See Bowen v. Massachusetts*, 487 U.S. 879, 898 & n.28, 900 (1988) (federal grant-in-aid programs "expressly included" among "proceedings in which [Congress] wanted to be sure the sovereign-immunity defense was waived" under § 702); *id.* at 908 n.46 (courts must employ a "broad construction of the APA and a narrow interpretation of the Tucker Act"); *Me. Cmty. Health Options v. United States*, 590 U.S. 296, 323-24 (2020) ("Tucker Act yields" to APA). Plaintiffs' APA and constitutional claims are not "in essence a contract claim" over which the Claims Court has jurisdiction because neither "the source of the rights" at issue nor "the type of relief sought" sound in contract. *See Atterbury v. U.S. Marshal Serv.*, 805 F.3d 398, 406 (2d Cir. 2015); *Up State Fed. Credit Union v. Walker*, 198 F.3d 372, 375 (2d Cir. 1999) (citing *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 968 (D.C. Cir. 1982)).

*i. Source of Rights.* The "source of the rights" for Plaintiffs' claims is Title VI and the Constitution, not any contract. Plaintiffs seek to enforce procedural rights under Title VI designed "for the protection of the innocent beneficiaries of programs." *Finch*, 414 F.2d at 1075-76; Mot. 11-19. Plaintiffs also seek to enforce rights under the First Amendment, Spending Clause, separation of powers, and Due Process clause. These rights exist independently of any contractual terms, and the Court "could decide this case without ever reading the grant agreement[s]." *S.F.*

*Unified Sch. Dist. v. Americorps*, 2025 WL 1180729, at \*9 (N.D. Cal. Apr. 23, 2025).[4] Where plaintiffs seek equitable relief to enforce constitutional, statutory, or regulatory limits on the government's termination of federal funds, the Tucker Act does not bar APA jurisdiction. *See, e.g.*, *Normandy Apts., Ltd. v. HUD*, 554 F.3d 1290, 1299-1300 (10th Cir. 2009); *Woonasquatucket River Watershed Council v. USDA*, 2025 WL 1116157, at \*1, 12-15, 26 (D.R.I. Apr. 15, 2025); *cf. Sharp v. Weinberger*, 798 F.2d 1521, 1523-24 (D.C. Cir. 1986).

 *Dep't of Educ. v. California*, 145 S. Ct. 966 (2025), is not to the contrary. Neither Title VI nor constitutional claims were at issue there. Rather, plaintiffs pled that funding terminations violated "the terms and conditions of the … grant awards," *California*, No. 1:25-cv-10548-MJJ (D. Mass.), Compl. ¶¶88-89, 183-84, and did not identify *any* constitutional, statutory, or regulatory rights apart from 2 C.F.R. §200.340, which circularly provides that grants can be terminated only "'pursuant to the terms and conditions of the federal award,'" *id.* ¶182; *see California v. U.S. Dep't of Educ.*, 132 F.4th 92, 96-97 (1st Cir. 2025). Numerous courts have held *California* distinguishable where the claims were, as here, grounded in constitutional, statutory, or regulatory rights, not contractual ones.[5] Further, unlike in *California*, Plaintiffs and their members are not parties to the contracts and grants at issue, and they do not seek to enforce any contractual rights. *See* Opp. 10; *e.g.*, *CLSEPA*, 2025 WL 1233674, at \*7; *cf. Atterbury*, 805 F.3d at 407; *Crowley Gov. Servs. v. GSA*, 38 F.4th 1099, 1110 (D.C. Cir. 2022).[6]

 Defendants' argument that Plaintiffs' claims sound in contract because they would have no cause of action but for the existence of the grants and contracts (Opp. 13) has repeatedly been rejected. *See Atterbury*, 805 F.3d at 402, 406-07 (Due Process Clause source of plaintiff's rights, notwithstanding that plaintiff would have no constitutionally protected interest absent contract);

---

[4] Defendants' cases (Opp. 15) are distinguishable; each turned on whether a contract term had been breached.

[5] *See, e.g.*, *Cmty. Legal Servs. In East Palo Alto v. HHS ("CLSEPA")*, 2025 WL 1233674, at \*7 (N.D. Cal. Apr. 29, 2025); *S.F. Unified Sch. Dist.*, 2025 WL 1180729 at \*6-12; UAW Amicus Br. (ECF 78-1) at 3 (citing more cases).

[6] Because Plaintiffs have brought no claim subject to the Tucker Act, the Claims Court could not assert "collateral jurisdiction" over their Title VI or constitutional claims. *See Overview Books, LLC v. U.S.*, 755 F.Supp.2d 409, 416 (E.D.N.Y. 2010) (Opp. 15). Further, the vast majority of Columbia's federal funding is comprised of research grants defined by statute as "grants-in-aid," 42 U.S.C. §241, which are not "contracts" subject to the Tucker Act. *See Rick's Mushroom Service, Inc. v. United States*, 521 F.3d 1338, 1343 (Fed. Cir. 2008); *Bowen*, 487 U.S. at 898 & n.28.

*Cubilete v. U.S.*, 469 F.Supp.3d 13, 19-20 (E.D.N.Y. 2020); *Megapulse*, 672 F.2d at 969; *Crowley*, 38 F.4th at 1110 ; *Normandy Apts.*, 554 F.3d at 1299-1300.[7] Nor can Defendants escape this Court's jurisdiction by contending that the grants were terminated "pursuant to … contract provisions" rather than Title VI. Opp. 13-14. Defendants' invocation of grant terms does not "trigger[] some mystical metamorphosis" and "automatically transform [this] action … into one on the contract and deprive the court of jurisdiction it might otherwise have." *Megapulse*, 672 F.2d at 969-70.

    *ii. Relief Sought.* Nor is the preliminary injunction Plaintiffs seek "fundamentally contractual in nature." *Atterbury*, 805 F.3d at 408. Because the source of Plaintiffs' rights is statutory and constitutional, the first prong of the *Megapulse* test is "determinative." *Id.* [8] Moreover, Plaintiffs do not seek damages as compensation for loss of federal funding.[9] Nor do Plaintiffs seek to compel "the payment of money past due under a contract" or "specific performance of a past due monetary obligation" for work already performed. *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210-11 (2002) (not an APA case; holding such relief unavailable under ERISA).[10] Rather, Plaintiffs seek an order (1) enjoining Defendants from giving effect to their unlawful March 7 funding withdrawal and March 13 letter, and (2) enjoining Defendants from terminating any additional grants or contracts or refusing to grant or continue federal financial assistance to Columbia or any Columbia faculty on the basis of alleged antisemitism unless Defendants have first complied with Title VI's procedural requirements. ECF 25. Such relief is equitable. *See Bowen*, 487 U.S. at 893; *California*, 145 S. Ct. at 968 ("district court's jurisdiction 'is not barred by the possibility' that an order setting aside an agency's action may result in the disbursement of funds"). That some component (reinstatement of terminated

---

[7] Unlike here, in *Up State* (Opp. 13-14), the "right" the plaintiff sought to vindicate was the "right to transfer title in the building," a right "not 'ultimately based' on anything other than the lease with the Army." 198 F.3d at 377.

[8] In *Presidential Gardens Assocs. v. U.S. ex rel. Sec'y of HUD*, 175 F.3d 132 (2d Cir. 1999), the crux of the complaint was that "HUD violated the … Agreement"; thus, the claims "ar[o]se out of a contract claim." *Id.* at 143.

[9] Plaintiffs' Complaint prays for damages for violations of their *constitutional* rights, not any *contract*. ECF 1 at 86 (seeking damages for deprivation of "rights secured … under the Constitution and laws of the United States"); *e.g.*, *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 397 (1971). To the extent the Court considers the prayer for constitutional damages to divest it of jurisdiction, then Plaintiffs disclaim any damages.

[10] The already-terminated funding that Plaintiffs seek to restore is principally funding for *future* work, not past due money for work already performed. *See* Wolfson Supp. Decl. ¶5.

funding) might resemble what would look like "specific performance" if this *were* a contract action does not alter the fundamentally non-contractual nature of the relief.[11] *Megapulse*, 672 F.2d at 971.[12] Were the law otherwise, then "the government could avoid injunctions against activities violative of a statutory duty simply by contracting not to engage in those activities." *Id.*

### III.    Plaintiffs Are Likely to Succeed on the Merits.

**A.    APA Claims.** Defendants concede that (1) they terminated federal funds based on Columbia's allegedly inadequate response to antisemitism; (2) they are conditioning all further funding on Columbia's adoption of policies Defendants view as remedies for that alleged unlawful discrimination; and (3) they never complied with Title VI's statutory procedures. Opp. 25. These concessions are dispositive and establish that Plaintiffs will succeed on the merits. Mot. 11-15, 18.

**1.** Defendants' funding terminations are not unreviewable decisions "committed to agency discretion by law." Opp. 17-19.[13] Title VI *expressly states* that termination decisions "shall not be deemed committed to unreviewable agency discretion within the meaning of [the APA]." 42 U.S.C. §2000d-2. That is decisive. Further, the "committed to agency discretion by law" exception to APA review "applies only in those rare instances where statutes are drawn in such broad terms that in a given case there is no law to apply." *Westchester v. HUD*, 778 F.3d 412, 419 (2d Cir. 2015). Unlike in *Lincoln v. Vigil*, 508 U.S. 182, 193 (1993), and *Milk Train, Inc. v. Veneman*, 310 F.3d 747, 751 (D.C. Cir. 2002) (Opp. 18), here Defendants' termination authority is constrained by Title VI, and courts have uniformly rejected agencies' reliance on Defendants' cited regulations as precluding APA review even outside the Title VI context.[14] Indeed, the OMB regulation does *not* purport to grant unreviewable discretion, but instead allows termination based on changed agency priorities

---

[11] Plaintiffs' request to enjoin Defendants from refusing to award *future* grants does not seek specific performance since those grants do not yet exist. *See B.K. Instrument, Inc. v. U.S.*, 715 F.2d 713, 728 (2d Cir. 1983).

[12] *See also Bowen*, 487 U.S. at 910 n.48; *Atterbury*, 805 F.3d at 407 ("The question of APA jurisdiction does not turn on whether the plaintiff could conceivably have based his claim on a government contract," but rather "whether the claim is validly based on grounds other than a contractual relationship with the government.").

[13] Defendants do not dispute that their actions constitute final agency action. 5 U.S.C. §704.

[14] *E.g.*, *California*, 132 F.4th at 97-98; *Pacito v. Trump*, 2025 WL 893530, at *6, *9 (W.D. Wash. Mar. 24, 2025); *Climate United*, 2025 WL 1131412, at *12-14, 16; *see also Planned Parenthood of N.Y.C. v. HHS*, 337 F. Supp. 3d 308, 324 (S.D.N.Y. 2018) (rejecting similar argument); *PETA v. Tabak*, 662 F. Supp. 3d 581, 593 (D. Md. 2023) (rejecting argument that NIH grant approvals are unreviewable).

only "to the extent authorized by law." 2 C.F.R. §200.340(a)(4).

    **2.** Defendants contend that their actions rested on OMB and Federal Acquisition Regulation (FAR) regulations governing termination of federal awards based on changed "agency priorities," 2 C.F.R. §200.340(a)(4), and government "convenience," so Title VI does not apply. Opp. 13-14, 25 (relying on *post hoc* declarations). That asks this Court to ignore the contemporaneous record, which establishes that Defendants expressly and repeatedly relied on Title VI. *See* Ex. 19 (investigation into antisemitism at Columbia "under Title VI"); Ex. 21 (review of Columbia's grants "in light of" Title VI investigations); Ex. 23 (cancellation of $400 million after review in light of Title VI investigations, reasoning that "[u]niversities must comply with all federal antidiscrimination laws if they are going to receive federal funding"); Ex. 26 (demanding policy changes following termination due to antisemitism and "other alleged violations of Title VI"); Exs. 28, 57; Gruenbaum Decl., Ex. A (ECF 93-1) (referencing purported "Title VI" violations). That Defendants failed to mention Title VI in some letters to Columbia regarding specific grants, *see* Lorsch Decl., Exs. D-E (ECF 92-4, 92-5), Rovner Decl., Exs. A-B (ECF 94-1, 94-2), is beside the point because Defendants concede a *single, blanket* decision was made at the Task Force level, on or before March 7, to "immediate[ly] cancel[] … $400 million" in funding based on allegations of antisemitism. Opp. 3, 23; Ex. 23.

    Even had Defendants not repeatedly invoked Title VI, the statute's procedural and substantive requirements would still apply because Defendants assert that their actions were based entirely on allegations of antisemitic discrimination at Columbia, *see* Opp. 1, 20, 23, 24—allegations undisputedly within Title VI's scope. An agency's invocation of broad, general authorities cannot bypass Congress's specific statutory constraints governing regulation on a particular topic. *See, e.g.*, *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 125-161 (2000); *Gonzales v. Oregon*, 546 U.S. 243, 260-61 (2006); *see also Finch*, 414 F.2d at 1076 ("Congressional history indicates that limiting the scope of the termination power" under Title VI "was integral to the legislative scheme."). That is especially true here, where Defendants purport to rely on mere *regulations* notwithstanding more specific *statutory* commands. *See Env't Def. v.*

*EPA*, 369 F.3d 193, 207 (2d Cir. 2004). Defendants' position would render Title VI's procedural protections a dead letter, since agencies could always (as here) invoke changed "agency priorities" or "convenience" to circumvent those protections. Defendants' assertion of unreviewable authority to terminate funding unconstrained by the statutory process is contrary to law. *See also W. Virginia v. EPA*, 597 U.S. 697, 721-23 (2022); *Woonasquatucket*, 2025 WL 1116157, at \*19-21.

Finally, Defendants' cited regulations themselves foreclose any such loophole. Under the OMB regulations, agencies "must comply with any requirements for hearings, appeals, or other administrative proceedings to which the recipient … is entitled *under any statute or regulation applicable to the action involved*," 2 C.F.R. §200.342 (emphasis added)—here, Title VI. *Accord* 45 C.F.R. §75.374 (HHS). Similarly, Defendants ignore the critical language in Section 200.340(a)(4) that agencies may terminate awards based on changed agency priorities only "to the extent authorized by law." *Pacito*, 2025 WL 893530, at \*9. Title VI also applies to procurement contracts governed by the FAR. 42 U.S.C. §2000d-1 (applying to "grant, loan, or contract"); *G.L. Christian & Assocs. v. U.S.*, 320 F.2d 345, 351 (Ct. Cl. 1963) ("Obligatory Congressional enactments are held to govern federal contracts…."). Defendants concede that all the terminations for "convenience" here were based on alleged antisemitism. Opp. 24. Title VI thus applied.

**3.** Defendants' actions were also contrary to the regulations they now rely on.

*i. NIH.* NIH *lacks authority* to terminate grants based on changed "agency priorities" because it has *not yet adopted* 2 C.F.R. §200.340(a)(4). *See* 89 Fed. Reg. 80055, 80056.[15] The currently operative NIH regulation does *not* allow termination based on changed agency priorities. 45 C.F.R. §75.372. The "Grants Policy Statement" (GPS) Defendants claim allows for termination under 2 C.F.R. §200.340 "is merely a guidance document, and, even if it says what [the agency] believes it says, does not control over the agency's regulations." *Healthy Teen Network v. Azar*, 322 F. Supp. 3d 647, 655 (D. Md. 2018).[16] Defendants do not claim the grant awards themselves

---

[15] OMB adopted the new "agency priorities" ground for termination in 2020, and modified it in 2024, but NIH adopted neither of these changes, and will adopt 2 C.F.R. §200.340 only effective October 1, 2025. *Id.* at 80056-57.

[16] *Accord Pol'y & Rsch., LLC v. HHS*, 313 F. Supp. 3d 62, 82 (D.D.C. 2018); *Planned Parenthood of Greater Wash. & N. Idaho v. HHS*, 328 F. Supp. 3d 1133, 1140 (E.D. Wash. 2018).

expressly incorporate the GPS or 2 C.F.R. §200.340. Lorsch Decl. (ECF 92) ¶11. Regardless, the GPS itself is clear that "in the case of a conflict"—as exists currently with respect to termination authority—the applicable "statutes and regulations govern" over the GPS or the "terms and conditions of individual awards." Lorsch Decl., Ex. A (ECF 92-1) at 3. Thus, to the extent NIH's terminations relied on changed agency priorities, they must be set aside. 5 U.S.C. §706(2)(a).

_ii. ED._ ED's terminations must be set aside for a different reason: ED _cannot_ announce new legally binding "agency priorities" without going through notice and comment rulemaking, which it did not do. _AACTE v. McMahon_, 2025 WL 833917, at *17-20 (D. Md. Mar. 17, 2025); 20 U.S.C. §1232(d); 34 C.F.R. §75.105.

_iii. HHS and GSA._ Even if FAR's provision for terminating contracts "for convenience" (Lorsch Decl., Ex. E (ECF 92-5); Gruenbaum Decl. (ECF 93) ¶¶10-11) trumped Title VI, which it does not (_supra_ 10), it applies only to certain procurement contracts, not to grants, and could not have formed the legal basis for Defendants' blanket termination of $400 million. _Chem Serv., Inc. v. Env't Monitoring Sys. Lab'y_, 12 F.3d 1256, 1259 n.5 (3d Cir. 1993).

**4.** Defendants also violated the APA's requirement of reasoned decision-making. Mot. 15-17, 19. Defendants' reliance on only their general allegations of "lack of concern for the wellbeing of Jewish students," Opp. 23-24, is inadequate for the reasons previously explained. Defendants' additional submitted letters simply reinforce that they have not engaged in reasoned decision-making. NIH's March 10 letter to Columbia admits that NIH's policy is _not_ to terminate funding but instead to allow recipients to "take appropriate corrective action," but nonetheless baldly states, with no explanation, that "no corrective action is possible here." Lorsch Decl., Ex. D. (ECF 92-4) [17] Meanwhile, the ED letters do not even explain _why_ funding is being terminated, but instead "merely list, disjunctively, five vague ways in which the specific grants at issue might be 'inconsistent.'" _AACTE_, 2025 WL 833917, at *21; Rovner Decl. Exs. A-B (ECF 94-1, 94-2).

---

[17] HHS regulations explain that funds cannot be withheld, even temporarily, unless the agency "determines that noncompliance cannot be remedied by imposing specific conditions," 45 C.F.R. §75.371, such as "[r]equiring additional project monitoring" or "[e]stablishing additional prior approvals," _id._ §75.207(c). _Accord_ 2 C.F.R. §§200.339, 200.208 (OMB); 2 C.F.R. §3474.1 (ED).

**B. First Amendment.** Even accepting their asserted motivations at face value, Defendants are violating the First Amendment through "conduct that, viewed in context, could be reasonably understood to convey a threat of adverse government action in order to punish or suppress … speech." *Vullo*, 602 U.S. at 191.

*i. Threat.* Defendants do not dispute that halting funding is the "tool[] [they] are using" to force Columbia to comply with their demands. Ex. 23. Nor can Defendants dispute that these threats—billions of dollars in crippling financial sanctions—are extraordinarily coercive. This is not a close case. *See Vullo*. at 189 (outlining coercive factors). Defendants' conduct radically exceeds subtle, indirect government coercion often found unconstitutional. *Cf. Okwedy v. Molinari*, 333 F.3d 339, 344 (2d Cir. 2003) (boycott threat requesting "dialogue" can be coercive).

*ii. To Punish or Suppress Speech.* All of Defendants' demands "target, in one way or another, the kind of linguistic or symbolic conduct that counts as speech for purposes of the First Amendment." Law Profs. Amicus Br. (ECF 82-1) at 9-18. Defendants suggest their sole focus is "conduct," yet expressly acknowledge their goal is to "ensure that students are not subjected to disruptive and antisemitic *speech*." Opp. 19, 22 (emphasis added). Defendants have repeatedly identified "radical protestors" and "anti-Semitic protesters" as the problem Columbia failed to prevent. Ex. 23; Gruenbaum Decl., Ex. A. (ECF 93-1) "[P]rotests [are] activities at the heart of what the Bill of Rights was designed to safeguard." *Jones v. Parmley*, 465 F.3d 46, 56 (2d Cir. 2006). As Defendants note, some protest speech may be unprotected including unlawful harassment and intimidation. But Defendants incorrectly suggest that Plaintiffs must prove the government intended only "to suppress or punish *protected* speech." Opp. 21 (emphasis added). The Supreme Court held the opposite in *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 65 (1963), where the defendant commission violated the First Amendment despite targeting "obscenity [which] is not within the area of constitutionally protected speech." *Accord Vullo*, 602 U.S. at 196. ("Nothing in [*Bantam Books*] turned on … [whether publications] contain[ed] protected speech").

*iii. Reasonably Understood.* Nor do Plaintiffs' claims turn on Defendants' "invidious" motives. Opp. 21. *See Greenwich Citizens Comm. v. Cntys. of Warren*, 77 F.3d 26, 32 (2d Cir.

12

1996) ("retaliatory intent" "not ... required for most affirmative First Amendment claims"). The test is objective: whether conduct "could be reasonably understood to convey a threat." *Vullo*, 602 U.S. at 191. Retaliatory intent was not at issue in *Bantam Books*, which recognized the commission was acting pursuant to its authority to regulate obscenity and prevent access by minors. 372 U.S. at 65.[18] Defendants' purpose is therefore immaterial to Plaintiffs' coercion claim. Like obscenity, constitutionally protected protest "is often separated from [unprotected speech] only by a dim and uncertain line." *Id*. at 66.[19] The Supreme Court's coercion doctrine prohibits the government from pressuring intermediaries over where to draw that line. This is because intermediaries likely will overpolice speech on the government's behalf, as they are "less invested in the speaker's message and thus less likely to risk the [government's] ire." *Vullo*, 602 U.S. at 198.[20] That is precisely what occurred here. Columbia swiftly acceded to Defendants' pressure campaign, prioritizing continued funding over the speech and academic freedom rights of its faculty and students. The Constitution bars coercion of this nature even if Defendants' motivations were solely to stop discrimination.

In any event, the record establishes that Defendants' motivations were *not* pure—they targeted Columbia, its faculty, and students based on their disagreement with ideas and viewpoints expressed on campus. Mot. 7-8; *supra* 1-2. For instance, the MESAAS department has been singled out for additional audits after Defendants demanded it be placed into receivership. Martin Supp. Decl. ¶4; Exs. 71, 72*.* Witness J's sealed declaration provides evidence this viewpoint-based targeting is a direct result of Defendants' coercion. *See Dube v. State Univ. of N.Y.*, 900 F.2d 587, 598 (2d Cir. 1990) (barring retaliation against "content of ... classroom discourse").

Defendants' targeting of Harvard makes their motivations even clearer. Defendants also

---

[18] The plaintiffs in *Vullo* alleged both First Amendment coercion and viewpoint discrimination, 602 U.S. at 185, but viewpoint discrimination is not a requisite element of the coercion analysis. *Id.* at 191.

[19] Efforts to punish expression as discriminatory harassment must comport with the First Amendment's narrow tailoring requirement. To be actionable, verbal or symbolic harassment must be "serious enough to have the systemic effect of denying the victim equal access to an educational program or activity." *Sauerhaft v. Bd. of Educ.*, 2009 WL 1576467, at *4 (S.D.N.Y. June 2, 2009); *Zeno v. Pine Plains Cent. Sch. Dist.*, 702 F.3d 655, 665 (2d Cir. 2012).

[20] Defendants attempt to distinguish *Vullo* by contending their conduct was directed at "the University's own malfeasance, (i.e., failing to take sufficient action to combat antisemitism)." Opp. 20. But that is no distinction. *Vullo* rejected a materially identical justification advanced by the government. 602 U.S. at 196 (claim that "insurers violated New York law does not excuse" First Amendment violation).

froze Harvard's funding based on alleged Title VI grounds, while issuing demands expressly aimed at altering viewpoints expressed on campus, including that Harvard "shutter all diversity, equity, and inclusion (DEI) programs" and make academic departments "individually viewpoint diverse." Ex. 64. At the same time, President Trump has repeatedly criticized purported faculty views, suggesting that Harvard "hir[ed] almost all woke, Radical Left, idiots and 'birdbrains'" and "teaches Hate and Stupidity." Exs. 73, 76; *see also* Ex. 77. Defendants' modus operandi is an "ideologically driven attempt[] to suppress a particular point of view" which is "presumptively unconstitutional." *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 830 (1995).[21]

Finally, Defendants' only argument on unconstitutional conditions is that they did not demand "adopt[ion of] a specific view." Opp. 22. The claim's touchstone is "leverag[ing] funding to regulate speech outside the contours of" the grants at issue. *Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*, 570 U.S. 205, 214-15 (2013). Defendants' demands do precisely that.

**C. Other Claims.** Defendants' only argument against Plaintiffs' separation of powers and Spending Clause claims is that they did not need to comply with Title VI, despite conceding that they canceled funding specifically "due to concerns regarding compliance with antidiscrimination laws" and to "effectuat[e]" the Executive Branch's "policy decisions with respect to … civil rights law." Opp. 26, 30. But Defendants have no authority to ignore statutory procedures that expressly apply when the government cancels federal funding for those reasons.

For the Due Process claims, Defendants argue that Plaintiffs' members do not have a property interest in the canceled government funding. Opp. 27. But they disregard Plaintiffs' and their members' "[l]iberty interests [which] include … a substantial infringement of a fundamental right" (here free speech) and "harm to one's reputation affecting another tangible interest." *Gondal v. DHS*, 343 F. Supp. 3d 83, 92 (E.D.N.Y. 2018); *see* Wolfson Supp. Decl. ¶¶6-7.

---

[21] Defendants suggest that Columbia likely would have taken comparable action independent of the government's demands. Opp. 20. That is implausible given the overwhelmingly coercive context and the timing of Columbia's almost immediate response. *See Dep't of Com. v. New York*, 588 U.S. 752, 785 (2019) (courts "are 'not required to exhibit a naiveté from which ordinary citizens are free.'"); Witness-J Decl. ¶¶8-9. In any event, there is no dispute that *Defendants* terminated hundreds of millions of dollars in funding and continue to threaten Columbia with greater punishment unless it does *more* to curtail faculty and students' speech. Plaintiffs challenge *Defendants'* unconstitutional pressure campaign.

**IV.    Plaintiffs and Their Members Will Suffer Irreparable Harm without Relief.**

Defendants' "alleged violation" of Plaintiffs' First Amendment rights "triggers a finding of irreparable injury." *Conn. Dep't of Env't Prot. v. OSHA*, 356 F.3d 226, 231 (2d Cir. 2004). Moreover, Plaintiffs' evidence establishes concrete First Amendment harms caused by Defendants' actions that are happening now. *Supra* 2-3 (citing evidence); Mot. 27-28.[22]

Plaintiffs have explained the myriad ways that Defendants' illegal actions are causing harm that is more than monetary and cannot be undone later. Mot. 28; *supra* 2 (citing evidence). These harms are far more than "[m]ere disruptions in business." *USA Network v. Jones Intercable, Inc.*, 704 F. Supp. 488, 491 (S.D.N.Y. 1989) (Opp. 29). Defendants' actions will "devastate or threaten the very existence," *id.* at 492, of ongoing projects and teams, irreparably undoing years of research and relationship building. Columbia cannot prevent all the resulting harms. Martin Supp. Decl. ¶¶6-9; Ex. 78 (180 more lost jobs). *See also Woonasquatucket,* 2025 WL 1116157, at *22.

**V.    The Balance of Equities and Public Interest Support Preliminary Injunctive Relief.**

Defendants' argument on this point simply rehashes their contention that they acted lawfully. Opp. 30. But they did not, and "[t]here is generally no public interest in the perpetuation of unlawful agency action." *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016). Additionally, yanking multi-year committed funds midstream, such that the government sees no results from its investment, is not good stewardship of the public fisc.[23]

<strong>CONCLUSION</strong>

For the foregoing reasons, the Court should order preliminary injunctive relief.

---

[22] Defendants' cited case acknowledges that "the chilling of first amendment rights … constitute[s] irreparable injury." *Am. Postal Workers Union, AFL-CIO v. U.S. Postal Serv.*, 766 F.2d 715, 721 (2d Cir. 1985). Unlike here, *Bloch v. Bouchey*, 2023 WL 9058377, at *19 (D. Vt. Dec. 28, 2023) (Opp. 28), involved an alleged *past* First Amendment violation, not ongoing or imminent violations.

[23] Defendants' request for a bond should be rejected. Opp. n.13. The Court has discretion "to require no security at all depending on the specific circumstances." *State Farm Mut. Auto. Ins. Co. v. Tri-Borough NY Med. Prac. P.C.*, 120 F.4th 59, 86 (2d Cir. 2024). Several courts have declined to require bonds in similar circumstances, where plaintiffs seek to vindicate constitutional and statutory rights and requiring a bond would effectively deny judicial review. *Climate United*, 2025 WL 1131412, at *21; *Woonasquatucket*, 2025 WL 1116157, at *24; *Widakuswara v. Lake*, 2025 WL 945869, at *11 (S.D.N.Y. Mar. 28, 2025); *Nat'l Ass'n of Diversity Officers in Higher Educ. v. Trump*, 2025 WL 573764, at *30 (D. Md. Feb. 21, 2025).

Dated: May 8, 2025

Respectfully submitted,

By:  S/ Orion Danjuma
Orion Danjuma
Rachel Goodman
Protect Democracy Project
82 Nassau Street, #601
New York, NY 10038
Tel: (202) 579-4582
Fax: (202) 769-3176
orion.danjuma@protectdemocracy.org
rachel.goodman@protectdemocracy.org

Janine M. Lopez*
Catherine Chen*
Protect Democracy Project
2020 Pennsylvania Ave. NW, Suite #163
Washington, D.C. 20006
Tel: (202) 579-4582
Fax: (202) 769-3176
janine.lopez@protectdemocracy.org
catherine.chen@protectdemocracy.org

Eve H. Cervantez*
Stacey M. Leyton*
Matthew J. Murray*
Connie K. Chan*
Juhyung Harold Lee*
Jonathan Rosenthal*
ALTSHULER BERZON LLP
177 Post St., Suite 300
San Francisco, CA 94108
Tel: (415) 421-7151
Fax (415) 362-8064
ecervantez@altber.com
sleyton@altber.com
mmurray@altber.com
cchan@altber.com
hlee@altber.com
jrosenthal@altber.com

Richard Primus**
The University of Michigan Law School
(institutional affiliation provided for identification
purposes only; not representing the University)
625 S. State Street

16

Ann Arbor, MI 48109
Tel: (734) 647-5543
Fax: (734) 764-8309
PrimusLaw1859@gmail.com

*Pro hac vice* application granted
**Pro hac vice* application forthcoming

**Counsel for Plaintiffs**

## **CERTIFICATE OF COMPLIANCE**

This document is 15 pages in length, as permitted by the Court's order and Individual Rules of Practice in Civil Cases, Rule 4.A.iii. ECF 96, 97. I certify that the document is 6,208 words in length, excluding the parts of the document that are exempted by Individual Rules of Practice in Civil Cases, Rule 4.A.iii.

<u>S/ Orion Danjuma</u>
Orion Danjuma