Akin Gump Strauss Hauer & Feld LLP
One Bryant Park, 44th Floor
New York, New York, 10036

T    +1 212.872.1000
F    +1 212.872.1002
akingump.com



**VIA ECF**
Honorable Mary Kay Vyskocil
United States District Court
Southern District of New York
500 Pearl Street, Room 2230
New York, NY 10007

April 8, 2025

Re:    Opposition to Letter Motion to Unseal in *American Association of University Professors et al. v. Department of Justice et al.*, Case No. 1:25-cv-02429

Dear Judge Vyskocil:

As counsel for The Trustees of Columbia University in the City of New York ("Columbia" or the "University"), we respectfully submit this letter opposing Plaintiffs' April 3, 2025, Letter Motion to Unseal the Declaration of Veena Dubal and Exhibit A (ECF No. 44 ("Mot.")). Exhibit A is a confidential email communication from a lawyer in the Office of General Counsel at Columbia ("OGC") to the principal investigators ("PIs") of certain federal grants and contracts that were previously awarded to the University and terminated in recent weeks. Contrary to Plaintiffs' contention, Exhibit A is protected by attorney-client privilege.

"The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981) (citing 8 J. Wigmore, Evidence § 2290 (McNaughton rev. 1961)). "Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Id.* The Supreme Court "has assumed that the privilege applies when the client is a corporation[,]" and has held that the privilege covers confidential communications with lower-level employees made in service of providing legal advice to an organization. *Id.* at 390, 395–97 (citing *United States v. Louisville & Nashville R.R. Co.*, 236 U.S. 318, 336 (1915)). That holding controls here.

Plaintiffs' contrary position rests primarily on the absence of an attorney-client relationship between OGC and the PIs who received Exhibit A. But that is not dispositive here. As explained in the attached declaration from the University's General Counsel ("Declaration")—and as Plaintiffs themselves acknowledge (Mot. 2)—OGC serves as the legal representative of, and provides legal advice to, *the University*. *See* Decl.¶¶ 2–4. It was in that capacity that the communication was sent.

Akin Gump Strauss Hauer & Feld LLP
One Bryant Park, 44th Floor
New York, New York, 10036

T  +1 212.872.1000
F  +1 212.872.1002
akingump.com



Once the attorney-client relationship is properly identified, it is patently obvious that Exhibit A is privileged. Indeed, the circumstances here parallel those in *Upjohn*—the seminal decision on privilege in the organizational context. There, corporate attorneys "prepared a letter containing a questionnaire" that was distributed to lower-level employees as part of an internal investigation. 449 U.S. at 386. In finding that attorney-client privilege applied to the documents at issue, the Supreme Court pointed out several salient facts and circumstances: "The communications . . . were made by Upjohn employees to counsel for Upjohn acting as such, at the direction of corporate superiors in order to secure legal advice from counsel." *Id.* at 394–95. "Information, not available from upper-echelon management, was needed to supply a basis for legal advice." *Id.* "The communications concerned matters within the scope of the employees' corporate duties, and the employees themselves were sufficiently aware that they were being questioned in order that the corporation could obtain legal advice." *Id.* And recipients were directed to keep the investigation confidential and return their responses to corporate counsel. *Id.*

Those facts and circumstances are present here as well. As described in the accompanying Declaration, Columbia's General Counsel directed an OGC lawyer to send Exhibit A, including the attached questionnaire, to the PIs so that OGC could provide advice to the University on whether and how to administratively appeal termination of the University's awards. Decl. ¶ 10. The PIs were "best positioned to articulate the factual basis" needed for OGC to draft those appeals given their familiarity with the underlying research, *id.* ¶ 11—in other words, "[i]nformation, not available from upper-echelon management, was needed to supply a basis for legal advice . . . ." *Upjohn*, 449 U.S. at 394. The communication also "was within the scope" of official duties for the sender and recipients, *id.*, and PIs were "directed to return their responses to [University] counsel, . . . in order to preserve the privilege," Dubal Decl. Ex. A. Moreover, the email was marked "Confidential; Pursuant to Attorney-Client Privilege" in bold, all capital letters, dispelling any doubt that recipients were aware of the privileged nature of the information. *Id*.

Notwithstanding those similarities, Plaintiffs reject application of *Upjohn* on the ground that Exhibit A "does not tell faculty members that OGC is seeking information on behalf of Columbia to provide legal advice to Columbia," and does not "provide any other information about why the email and attachment are privileged attorney-client communications." Mot. 2. Neither contention holds water. The first is simply wrong: On its face, Exhibit A states that "[t]he University continues to assess the strategies most likely to protect and restore the University's federal research portfolio" of which "[i]ndividual appeals of terminated awards may be a part," and that OGC "need[s] [the PIs'] help to be prepared to file such appeals on time." Dubal Decl. Ex. A. Those statements explain both that the University is assessing various strategies with the help of OGC, and that the surveys will enable OGC to successfully effectuate one such strategy—or, to use Plaintiffs' words, they "tell faculty members that OGC is seeking information on behalf of Columbia to provide legal advice to Columbia . . . ." Mot. 2.

Akin Gump Strauss Hauer & Feld LLP
One Bryant Park, 44th Floor
New York, New York, 10036

T   +1 212.872.1000
F   +1 212.872.1002
akingump.com



Plaintiffs cite no meaningful authority to support their second contention—that, in order for a communication to be privileged, it must inform the recipient as to why the privilege applies.[1] But that argument fails in any event. As the primary researchers on projects funded by Columbia's terminated awards, the PIs were well aware of the complicated circumstances surrounding the University's efforts at restoration. They needed no additional information to understand why the strategic discussions and legal advice described in Exhibit A would be privileged.

Plaintiffs do not and cannot contend that the limited disclosure of Exhibit A to the General Counsel for the American Association of University Professors waived privilege. The "power to waive the corporate attorney-client privilege rests with [a] corporation's management and is normally exercised by its officers and directors[,]" not lower-level employees. *Commodity Futures Trading Co. v. Weintraub*, 471 U.S. 343, 348 (1990). Nor has Columbia "acquiesce[d]" in the PIs' unauthorized disclosure. *Young v. CSX Transp., Inc.*, 12-CV-01150, 2013 WL 12409907, at *2 (N.D.N.Y. Oct. 24, 2013). "When PIs asked OGC's position on disclosure of the information to others, OGC did not indicate that it would be acceptable to disclose the communication outside of the University." Decl. ¶ 14.

Unsealing of Exhibit A and the Dubal Declaration describing it would harm Columbia. The University is actively engaged in negotiations with Defendants about the terminated awards, and Exhibit A contains confidential information about Columbia's strategy in those discussions. That "full and frank communication" was privileged when made and must remain shielded from the public and Defendants to protect Columbia's interests. *Upjohn*, 449 U.S. at 389.

For these reasons, Plaintiffs' Letter Motion should be denied. Should the Court grant the motion, however, Columbia respectfully requests that all identifying information for the OGC lawyer who sent the email be redacted before Exhibit A is placed on the public docket. As Plaintiffs themselves explain in a separate motion, there is considerable public interest in this matter and those involved are concerned for their personal safety and privacy. *See* ECF No. 33 at 2. The University and the OGC lawyer share those concerns. Moreover, that individual is not a party to this case and was drawn in solely through the actions of others—the PIs who improperly disclosed the email and Plaintiffs who now ask this Court for permission to expose it. The OGC lawyer's privacy and safety should not be compromised as a result of actions beyond that person's control.

---

[1] Plaintiffs handwave at a New York Bar Rule to support this claim. Mot. 2 (citing N.Y. R. Prof. Conduct 1.13). But the Rules of Professional Conduct do not dictate whether attorney-client privilege applies. Moreover, the cited rule is clearly designed to capture when corporate counsel should provide an *Upjohn* warning to an employee explaining that counsel does not represent him or her individually—a circumstance that is wholly irrelevant to this matter.

Akin Gump Strauss Hauer & Feld LLP
One Bryant Park, 44th Floor
New York, New York, 10036

T +1 212.872.1000
F +1 212.872.1002
akingump.com



Respectfully submitted,

*/s/ Joseph L. Sorkin*
Joseph L. Sorkin
AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park, 44th Floor
New York, N.Y. 10036
jsorkin@akingump.com
Tel.: 212-872-1000
Fax: 212-872-1002

*Counsel for The Trustees of Columbia University in the City of New York*